**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ADAM OSTRZENSKI, M.D.,
Plaintiff-Appellant,

v.                                                              No. 98-1717

MARK S. SEIGEL, M.D.,
Defendant-Appellee.

ADAM OSTRZENSKI, M.D.,
Plaintiff-Appellee,

v.                                                              No. 98-1809

MARK S. SEIGEL, M.D.,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-97-1823-DKC)

Argued: March 3, 1999

Decided: May 24, 1999

Before WILKINS and WILLIAMS, Circuit Judges, and
LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Williams and Judge Lee joined.

_____

**COUNSEL**

**ARGUED:** Chester Alexander Hewes, Jr., HEWES, GELBAND, LAMBERT & DANN, Washington, D.C., for Appellant. Andrew Howard Baida, Assistant Attorney General, Baltimore, Maryland, for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Thomas W. Keech, Assistant Attorney General, Baltimore, Maryland, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Dr. Adam Ostrzenski brought this action pursuant to 42 U.S.C.A. § 1983 (West Supp. 1998) against Dr. Mark S. Seigel, who conducted a peer review of Ostrzenski at the behest of the Maryland Board of Physician Quality Assurance (the Board). Ostrzenski alleged that Seigel denied him due process under the Fifth and Fourteenth Amendments as a result of procedural irregularities in the peer review process. In addition, Ostrzenski brought a claim for false light invasion of privacy under Maryland law. The district court dismissed Ostrzenski's action for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), reasoning that Seigel was entitled to absolute quasi-judicial immunity from prosecution on Ostrzenski's § 1983 claim and that Ostrzenski had alleged the publication of no facts that could be considered "highly offensive" to Ostrzenski as required for a Maryland false light claim. J.A. 40 (internal quotation marks omitted). Because we conclude that Seigel is entitled to absolute quasi-judicial immunity on both the § 1983 and the false light claims, we affirm.

I.

The Maryland Medical Practice Act governs the licensing and disciplining of physicians in Maryland. See Md. Code Ann. Health Occ. §§ 14-101 to 14-702 (1994 & Supp. 1998). The Board, the state regulatory agency charged with carrying out the provisions of the Act, is authorized to investigate allegations of violations of the Act, includ-

2

ing accusations that a physician has "[f]ail[ed] to meet appropriate standards as determined by appropriate peer review for the delivery of quality medical and surgical care performed in ... any ... location in this State." Id. § 14-404(a)(22). The Act instructs that after conducting a preliminary investigation, "the Board shall refer any allegation involving standards of medical care ... to the[Maryland Medical and Chirurgical] Faculty for further investigation and physician peer review within the involved medical specialty." Id. § 14-401(c)(2)(i). The Faculty may in turn "refer the allegation for investigation and report to the appropriate ... [c]ounty medical society ... or ... [c]ommittee of the Faculty." Id.§ 14-401(c)(2)(ii). The investigating society or committee is required to submit a "report to the Board on its investigation" that "contain[s] the information and recommendations necessary for appropriate action by the Board." Id. § 14-401(e)(1)(i), (e)(2). Upon "receipt of the report, the Board shall consider the recommendations made in the report and take the action ... that it finds appropriate under this title." Id. § 14-401(e)(3). The Board is authorized to impose a variety of sanctions, including license revocation. See id. § 14-404(a).

In 1991, Holy Cross Hospital in Maryland decided to restrict the privileges of Ostrzenski, a gynecological surgeon trained in laparoscopic techniques. The hospital notified the Board of its decision, sparking an investigation of Ostrzenski. The Board requested that the Faculty advise it on whether a formal charge against Ostrzenski should be pursued. And, the Faculty in turn referred the matter to the Montgomery County Medical Society, which assigned peer reviewers Drs. Mark S. Seigel and Ronald Orleans to review Ostrzenski's practice. In February 1993, Seigel and Orleans visited Ostrzenski's office and selected ten files for review. Based on their review, they submitted a report to the Board in March 1993. In June 1994, the Board issued charges against Ostrzenski.

In May 1997, Ostrzenski brought this action against Seigel. The first count alleged that Seigel had deprived Ostrzenski of due process in violation of the Fifth and Fourteenth Amendments through various procedural irregularities in the peer review process and the report. The second count alleged a false light claim under Maryland law, charging that Seigel had knowingly or recklessly included false information in the report.

3

Prior to answering the complaint, Seigel filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the district court dismissed the action with prejudice. See Carter v. Norfolk Community Hosp. Ass'n, 761 F.2d 970, 974 (4th Cir. 1985) (explaining that a dismissal by the district court for failure to state a claim is with prejudice unless the court specifically orders dismissal without prejudice). The court held that Seigel's duties as a peer reviewer were quasi-judicial and thus that he was immune from§ 1983 liability. In addition, the district court ruled that Ostrzenski's lone allegation of falsehood in the report was that Seigel had misrepresented that he had no conflicts of interest with Ostrzenski and that this representation was "not even mildly offensive, let alone `highly offensive' as required by Maryland law." J.A. 40. Ostrzenski challenges the ruling of the district court with respect to both of these causes of action. We address them seriatim.

II.

"Suits for monetary damages are meant to compensate the victims of wrongful actions and to discourage conduct that may result in liability." Forrester v. White, 484 U.S. 219, 223 (1988). The prospect of liability for damages encourages public officials to perform their assignments appropriately and in a manner that does not injure others. See id. Because generally actions for damages serve this laudable goal, the Supreme Court has been very sparing in its grants of absolute immunity from damages for constitutional violations in § 1983 actions. See id. at 224. In some situations, however, the threat of liability for damages hinders, rather than advances, the prospects that public officials will perform their duties in the public interest. See id. at 223-24. The special functions of some governmental officials require that they be exempted completely from such liability. See Butz v. Economou, 438 U.S. 478, 508 (1978) (recognizing "that there are some officials whose special functions require a full exemption from liability"). Such officials include judges performing judicial acts within their jurisdiction, see Pierson v. Ray , 386 U.S. 547, 553-54 (1967), prosecutors performing acts "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. 409, 430 (1976), and "quasi-judicial" agency officials whose duties are comparable to those of judges or prosecutors when adequate procedural safeguards exist, see Butz, 438 U.S. at 511-17. The question

4

here is whether the district court correctly determined that Seigel's duties as a peer reviewer fell within this latter category.

Every court of appeals that has addressed the issue has concluded that members of a state medical disciplinary board are entitled to absolute quasi-judicial immunity for performing judicial or prosecutorial functions. See O'Neal v. Mississippi Bd. of Nursing, 113 F.3d 62, 65-67 (5th Cir. 1997); Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 701 (1st Cir. 1995); Watts v. Burkhart, 978 F.2d 269, 272-78 (6th Cir. 1992) (en banc); Bettencourt v. Board of Registration in Med., 904 F.2d 772, 782-84 (1st Cir. 1990); Horwitz v. State Bd. of Med. Exam'rs, 822 F.2d 1508, 1512-16 (10th Cir. 1987). The rationale underlying these decisions is that medical disciplinary boards satisfy the criteria set forth in Butz as justifying absolute immunity because (1) the boards perform essentially judicial and prosecutorial functions; (2) there exists a strong need to ensure that individual board members perform their functions for the public good without harassment and intimidation; and (3) there exist adequate procedural safeguards under state law to protect against unconstitutional conduct by board members without reliance on private damages lawsuits. See, e.g., O'Neal, 113 F.3d at 66; Bettencourt, 904 F.2d at 783.

Although Seigel is not a Board member, and thus he is one step removed from the "judicial" functions of the Board, he nevertheless may be entitled to absolute quasi-judicial immunity if he is engaged in a protected prosecutorial function. See Butz , 438 U.S. at 515 (holding "that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts"); Wang, 55 F.3d at 701-02 (holding medical board and its attorneys who investigated the charges were entitled to absolute immunity); see also Kwoun v. Southeast Mo. Prof'l Standards Review Org., 811 F.2d 401, 406-09 (8th Cir. 1987) (holding that state peer review groups, which were relied upon by the U.S. Department of Health and Human Services to make recommendations concerning whether physicians were entitled to participate in the Medicare program, were entitled to absolute immunity); cf. Kalina v. Fletcher, 118 S. Ct. 502, 508 (1997) (explaining "that the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but

5

because any lesser degree of immunity could impair the judicial process itself," and thus, in determining immunity, a court must "examine the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks omitted)). A prosecutor performing the duties of initiating a prosecution or presenting a case is entitled to absolute immunity in an action for damages claiming that the prosecutor violated the plaintiff's constitutional rights. See Imbler, 424 U.S. at 431. However, this absolute immunity does not encompass all of a prosecutor's official activities. See Burns v. Reed, 500 U.S. 478, 492-96 (1991). Thus, although absolute immunity applies to activities "intimately associated with the judicial phase of the criminal process" because the reasons underlying the grant of the immunity apply to those activities by a prosecutor, absolute immunity is not required for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." Imbler, 424 U.S. at 430-31. Accordingly, a prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity. See Burns , 500 U.S. at 491-92. Likewise, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons , 509 U.S. 259, 273 (1993). But, a prosecutor is not entitled to absolute immunity for giving legal advice to law enforcement officers because the risk of vexatious lawsuits as a result of this activity is slight, the giving of legal advice is not related to the prosecutor's responsibilities to screen cases for prosecution and to safeguard the judicial process, and insufficient checks exist to restrain a prosecutor's activities in this area. See Burns, 500 U.S. at 492-96. And, absolute immunity is unavailable when a prosecutor conducts a press conference or when he fabricates evidence concerning an unsolved crime. See Buckley, 509 U.S. at 272-78. The Supreme Court has explained:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative func-

6

> tions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

Id. at 273 (internal quotation marks omitted).

Ostrzenski maintains that Seigel was acting in the role of an investigator in preparing the report as a peer reviewer for the Board and that therefore he is not entitled to immunity. Seigel, on the other hand, asserts that his activities were analogous to those in which a prosecutor must engage in evaluating whether charges are to be pursued and that therefore he is entitled to immunity.

Undoubtedly, Seigel's preparation of the peer review report involved an examination of Ostrzenski's practice and files. But, not all activities by a prosecutor involving a review of evidence fall outside his duties as an advocate. Clearly, some evidentiary review is necessary to determine whether to pursue charges, and a prosecutor is held to be absolutely immune from liability for performing such duties. See id. Seigel's duties as a peer reviewer were analogous to those of a prosecutor reviewing the evidence to determine whether to recommend prosecution.

Additionally, there is a strong need to ensure that peer reviewers perform their functions for the public good without harassment and intimidation. Peer reviewers exercise their professional discretion in determining whether one of their fellow physicians has deviated from the standard of professional care in a manner requiring the Board to intervene. If peer reviewers were to face the prospect of civil liability for damages, the exercise of that discretion might be distorted. See Butz, 438 U.S. at 515. Although a peer reviewer would not likely be hounded with litigation if he were to decide that a physician has committed no wrongdoing, there is a real risk that a peer reviewer who concluded that charges against a physician should be pursued would meet with a retaliatory response. See id. A physician anticipating disciplinary action, including the loss of a license to practice medicine, may well seek vengeance.

Furthermore, there are adequate procedural safeguards under state law to protect against unconstitutional conduct by peer reviewers

7

without reliance on private damages lawsuits. Prior to taking disciplinary action against a physician, the Board must give the physician notice and an opportunity for a hearing before a hearing officer conducted in accordance with the Maryland Administrative Procedures Act. See Md. Code Ann. Health Occ. § 14-405(a)-(b). The physician may call witnesses, offer evidence, cross-examine witnesses, and present argument. See Md. Code Ann. State Gov't § 10-213(f) (1995). Charges must be proven by clear and convincing evidence. See Md. Code Ann. Health Occ. § 14-405(b). At the conclusion of the hearing, "the hearing officer shall refer proposed factual findings to the Board for the Board's disposition." Id. § 14-405(e). A physician is entitled to seek judicial review of an adverse decision. See id. § 14-408; Md. Code Ann. State Gov't § 10-222 (1995).

In sum, a physician requested by the Board to conduct a peer review performs a function analogous to a prosecutor reviewing evidence to determine whether charges should be brought. As such, absolute immunity is necessary to foster an atmosphere in which the peer reviewer can exercise his professional judgment without fear of retaliation. An action for damages is not necessary to safeguard against the inappropriate exercise of that discretion since other protections are provided through review by the hearing officer, the Board, and ultimately the judiciary. Consequently, we conclude that Seigel is entitled to absolute quasi-judicial immunity on Ostrzenski's § 1983 claim.

III.

The district court dismissed Ostrzenski's claim of false light invasion of privacy under Maryland law for failure to state a claim upon which relief could be granted. Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This portion of Rule 8 indicates the objective of the rules to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim ...." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 (2d ed. 1990) (footnote omitted). Under Rule 8(a)(2), a claim is acceptable if "a plaintiff colorably states facts which, if proven, would entitle him to relief." Adams v. Bain, 697

8

F.2d 1213, 1216 (4th Cir. 1982). But, a claimant need not set out in detail all of the facts upon which the claim for relief is based; rather, he need only provide a statement sufficient to put the opposing party on fair notice of the claim and the grounds supporting it. See Atchison, Topeka & Santa Fe Ry. v. Buell, 480 U.S. 557, 568 n.15 (1987); Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998); Gilbane Bldg. Co. v. Federal Reserve Bank, 80 F.3d 895, 900 (4th Cir. 1996).

This court reviews a dismissal of a claim by the district court under Rule 12(b)(6) de novo. See Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). On appeal from an order granting a Rule 12(b)(6) motion to dismiss, this court accepts as true the facts as alleged in the complaint, views them in the light most favorable to the plaintiff, and recognizes that dismissal is inappropriate "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Id. at 1134 & n.4 (internal quotation marks omitted); see Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (explaining that dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

Ostrzenski's false light count alleged the following:

> [Seigel] has published false statements about the Plaintiff to others in the form of, inter alia, the peer review report issued to the Montgomery County Medical Society[. Seigel] knew those statements were false when he made them, or he made them with reckless disregard as to their falsity. The statements were highly offensive to any reasonable person and they placed [Ostrzenski] in a false light.

J.A. 20. Earlier in the complaint, Ostrzenski alleged:

> The Report, signed by [Seigel], contained misrepresentations and alleged facts that [Seigel] knew, or should have known were untrue. Among others, the Report falsely reported that [as a peer reviewer, Seigel reported that he did not have a conflict of interest with Ostrzenski].

9

J.A. 12-13.

The tort of false light is a type of action claiming an invasion of privacy. Under Maryland law:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995) (quoting Restatement (Second) of Torts § 652E (1977)).

The district court dismissed Ostrzenski's complaint, reasoning that the only allegation of falsity made by Ostrzenski was that Seigel misrepresented in the report that he did not have a conflict of interest and that this "falsity" could not be highly offensive. Although the district court was correct that an allegation that Seigel lacked a conflict of interest that would prohibit him from conducting the peer review does not satisfy the "highly offensive" standard, the complaint also alleges that the report "contained misrepresentations and alleged [false] facts." J.A. 13. The district court ignored this allegation of falsity. Because the report was not incorporated into the complaint, and since Seigel has not yet answered, the report is not before the court. We cannot say that it is clear that Ostrzenski cannot prove that some factual assertion in the report is highly offensive.

Seigel also asserts that the allegations contained in Ostrzenski's complaint do not "`set forth enough details so as to provide [him] and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.'" Karpel, 134 F.3d at 1227 (quoting Self Directed Placement Corp. v. Control Data Corp. , 908 F.2d 462,

10

466 (9th Cir. 1990)). Although we doubt that Ostrzenski's complaint fails to satisfy this modest requirement, even if we were to agree that the allegations of Ostrzenski's complaint were inadequate because there should have been an explicit mention of the matters contained in the report that were "highly offensive," the district court should not have dismissed the complaint with prejudice without permitting Ostrzenski an opportunity to amend.

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 360-67 (2d ed. 1990) (emphasis added) (footnotes omitted); see id. at 361 n.81 (collecting cases). There is no indication from any source that Ostrzenski could not have amended his complaint to allege representations in the report that were highly offensive. Consequently, we cannot conclude that an amendment would have been futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that a court properly may refuse to allow leave to amend pleadings when, inter alia, the proposed changes would be futile).

Nevertheless, we may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court. See United States v. Swann, 149 F.3d 271, 277 (4th Cir. 1998). Our research discloses that Mary-

11

land law recognizes absolute immunity for prosecutors when evaluating whether charges should be brought. See Gill v. Ripley, 724 A.2d 88, 96-98 (Md. 1999); see also Parker v. State , 653 A.2d 436, 442-43 (Md. 1995) (recognizing that judicial immunity is broader than public official immunity in that the former immunizes officials from civil liability for violations of the Maryland Constitution and for intentional torts in addition to other state-law causes of action). Moreover, Maryland law recognizes absolute immunity in quasi-judicial administrative proceedings when the nature of the public function of the proceedings is sufficiently compelling and procedural safeguards are adequate to minimize the potential for injury at the hands of the immunized official. See Odyniec v. Schneider, 588 A.2d 786, 790 (Md. 1991); Gersh v. Ambrose, 434 A.2d 547, 551-52 (Md. 1981). For the reasons set forth above concerning why Seigel is absolutely immune from liability for damages under § 1983, we conclude that Seigel is entitled to absolute quasi-judicial immunity under Maryland law from Ostrzenski's false light claim.

IV.

In sum, we conclude that Seigel's activities as a peer reviewer were analogous to those of a prosecutor in determining whether to press charges and thus were intimately associated with the judicial process. Accordingly, Seigel was entitled to absolute quasi-judicial immunity from liability, and the district court properly dismissed Ostrzenski's action for failure to state a claim upon which relief can be granted.

AFFIRMED

12