Thomas P. MOORE, M.D.,
Plaintiff–Appellee,

v.

GUNNISON VALLEY HOSPITAL,
Defendant,

and

Robert P. Austin;  Brian K. Moloney, M.D.;  Gloria Beim, M.D.;  Ronald A. Long, M.D.;  Jay McMurren, M.D.; and Jay Wolkov, D.O., Defendants–Appellants.

No.  01–1501.

United States Court of Appeals,
Tenth Circuit.

Nov. 19, 2002.

Andrew D. Ringel (Steven M. Gutierrez with him on the briefs) of Hall & Evans, L.L.C., Denver, CO, for Defendants–Appellants.

Donald T. Trinen of Hart & Trinen, LLP, Denver, CO, for Plaintiff–Appellee.

Before KELLY, McKAY, and HARTZ, Circuit Judges.

McKAY, Circuit Judge.

This is an interlocutory appeal of the district court's denial of Appellants' Rule 12(b)(6) Motion to Dismiss Appellee's claim on the ground of absolute immunity. We review a 12(b)(6) dismissal *de novo*, accepting as true all well-pleaded allegations in the complaint and construing them in a manner favorable to the non-moving party. *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir.2001).

## I. Background

As alleged in Appellee's Complaint, he is a physician licensed to practice medicine in Colorado. He joined the medical staff at Gunnison Valley Hospital, a public hospital in the State of Colorado, in June 1995. On March 21, 1998, he was temporarily suspended from practicing medicine at the hospital by an ad hoc committee appointed by certain hospital administrators, including Mr. Austin and Dr. Moloney. The committee members included Dr. Beim, Dr. Long, and Dr. Moloney. The specific reasons for the suspension have not been explained in detail but appear to involve Appellee's mistreatment of a patient at another hospital prior to joining the staff at Gunnison Valley. Five days later, on March 26, 1998, the medical staff at the hospital voted to terminate the summary suspension, and Appellee was allowed to continue working.

On December 22, 1998, Appellee received two formal admonitions by the medical staff of the hospital following a decision by another ad hoc review committee. This second committee was also appointed by Mr. Austin and Dr. Moloney, and it consisted of Dr. McMurren, Dr. Wolkov, and Dr. Long. The admonitions appear to be based upon the same alleged misconduct at issue in the summary suspension.

Prior to both the suspension and the issuance of the admonitions, Appellee was not notified of the existence of the ad hoc committees or the pending investigations, nor was he given an opportunity to appeal or challenge the actions before the admonitions were issued. Appellee was not permitted to appeal the issuance of the admonitions, and he did not appeal the summary suspension before it was terminated.

Appellee brought suit under 42 U.S.C. § 1983 alleging violations of his Fourteenth Amendment right to procedural due process. Appellants moved for dismissal on the ground of absolute immunity, which motion the district court denied. Appellants appeal the denial of absolute immunity.

## II. Absolute Immunity

■ Appellants were each involved in the peer-review process either as administrators for the hospital or as members of the committees themselves. Appellants assert that Colorado statutes identify the peer-review-committee process as essential to the functioning of the Colorado Board of Medical Examiners and that such statutes authorize the existence and authority of such committees. Based on this premise, Appellants conclude that the peer-review committees should be viewed as extensions of the state medical board and receive the

protection of absolute quasi-judicial immunity in connection with the review and discipline of the medical practice.

Appellee counters that the peer-review committees lack certain essential characteristics of a judicial body which is worthy of absolute immunity. In particular, Appellee points to the lack of notice and a hearing, the non-adversarial nature of the process, the absence of any meaningful right to appeal the decisions of the committees, and the lack of oversight by the state medical board.

## A. Immunity Under *Cleavinger*

In examining the absolute immunity issue, we follow carefully the test established by the Supreme Court in *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Citing *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the *Cleavinger* Court identified

> the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted from qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger*, 474 U.S. at 202, 106 S.Ct. 496. These six factors are to be considered in determining whether to grant absolute immunity. With these factors as our guide, we proceed to assess the nature of the peer-review committees at issue in this case.

### 1. Harassment/Intimidation

The first of these factors is "the need to assure that the individual can perform his functions without harassment or intimidation." *Id.* The mere existence of this lawsuit warns of the potential harassment members of peer-review committees potentially face. However, it is important to note the potential for harassment in the opposite direction as well. In a situation such as this, and particularly in a small community where there are few members of the relevant profession, there is the potential for peer reviewers to harass other members of their profession by initiating frivolous investigations and disciplinary proceedings. Nevertheless, this factor tends to favor the Appellants in this case.

### 2. Procedural Safeguards

The second factor we consider is the presence of procedural safeguards that reduce the need for private lawsuits. In analyzing this factor, it is important to consider the appropriate scope of the inquiry. As Appellee alleges, prior to the summary suspension and the issuance of the admonitions, he was afforded no procedural protections. He had no right to a hearing or even to notice of pending action.

While not denying the absence of pre-deprivation protections, Appellants contend that the availability of post-deprivation procedures, as well as review by the state medical board, are adequate. Appellants argue that the summary suspension is a temporary action reserved for emergency situations which only becomes permanent following more substantive proceedings. However, because Appellee has

alleged damages from both his temporary suspension and the admonitions, Appellants must show the necessity for this abbreviated emergency process. They fail to identify such emergency circumstances here.

### 3. Political Influence

The third factor involves the presence of political influence in the decision-making process. Appellants seek the protection of quasi-judicial immunity, and therefore suggest that the peer-review committee was acting as an adjudicatory body. As with any judicial process, independence of the adjudicators is essential. However, this case involves a much higher level of potential political influence. The members of the review committee all work at the same hospital as Appellee and, as peers in a small medical community, are his competitors. Such a situation lacks the kind of independence typical of judicial bodies.

### 4. Importance of Precedent

The fourth factor emphasizes the importance of precedent. We see two aspects of precedent relevant to this inquiry: internal and external precedent. Regarding internal precedent, there appears to be nothing in the record indicating that Gunnison Valley Hospital was looking to its own prior decisions for guidance or that its decision in this matter would be binding precedent for future actions. There is likewise nothing in the record to indicate that the peer-review committee was relying on any precedent from other hospitals in handling situations of this kind. In the absence of such internal and external precedent, this factor adds little to the analysis.

### 5. Adversarial Nature

The fifth factor examines the adversarial nature of the process. As discussed above,

prior to the issuance of the summary suspension and written admonitions, the process was completely non-adversarial. Without notice of the pending actions, Appellee was unable to challenge those actions before they became effective. Once again, Appellants suggest that Appellee would have had the opportunity for an adversarial process with procedural safeguards had the summary suspension not been terminated. However, this argument ignores the fact that Appellee was adversely affected by the summary suspension and that no process was available following the issuance of the written admonitions.

### 6. Appealability

The sixth and final factor involves the right of appeal. Appellants point to the procedures under the Bylaws, Rules and Regulations of the Medical Staff of Gunnison Valley Hospital, *see* Aplt. Br. at 37–38 (citing of the Gunnison Valley Hospital Medical Staff Bylaws, Rules and Regulations (the "Bylaws") at 24–25, Aplt.App. at 78–79), which are available to any staff member wishing to challenge an adverse action against them. However, while the Bylaws provide a full range of procedural protections, they explicitly deny those procedures for those wishing to challenge the issuance of a letter of admonition. *See Bylaws* at 25; Aplt. Br. at 79. The procedures are likewise unavailable to challenge a summary suspension if it has been terminated by the staff. *See id.*

Appellants are correct in suggesting that, had the staff failed to terminate the suspension or sought a permanent suspension, Appellee would have had significant procedural protections, including a right to appeal. However, those are not the facts here. Appellee is left with two letters of admonition and a summary suspension on

his record with no recourse other than a lawsuit. Appellants' identification of the right to file a lawsuit as a sufficient right of appeal turns the right of appeal on its head. It suggests that the committee should be granted immunity from suit since its procedures do not allow internal appeal but allow the committee to be sued.

Having considered these six *Cleavinger* factors, we conclude that this peer-review process lacks significant characteristics of a judicial body entitled to judicial immunity. Having rejected the claims focused on the particularities of this peer-review committee, we turn to Appellants' arguments that we should look beyond the specific facts of the case to the more general nature of peer-review committees and their place in the regulation of the medical practice in connection with the state medical board.

## B. Peer–Review Committees as Extensions of the State Medical Board

■ Appellants suggest that the district court failed to appreciate the important role of peer-review committees in the regulation and oversight of the practice of medicine in Colorado. In making this argument, Appellants cite a federal and a Colorado statute as examples of the important role of peer review in the regulation of the medical profession. As Appellants concede, however, these statutes do not apply directly in this case as a basis for absolute immunity. Rather, Appellants suggest that these statutory schemes "inform this Court's understanding and analysis of the nature and function of the individual Defendants' role in the professional peer review process at Gunnison Valley Hospital." Aplt. Reply Br. at 5.

Additionally, Appellants cite several sections of the Colorado Medical Practice Act,

Colo.Rev.Stat. Ann. §§ 12–36–101 *et seq.* (2001), to suggest that the Colorado legislature has extended the authority of the state medical board to include peer-review committees. For example, the Colorado General Assembly recognized

> that the board of medical examiners, while assuming and retaining ultimate authority for licensure and discipline ... cannot practically and economically assume responsibility over every single allegation or instance of purported deviation from the standards of quality for the practice of medicine.... It is therefore the intent of the general assembly that the board of medical examiners utilize and allow professional review committees and governing boards to assist it in meeting its responsibilities under article 36....

Colo.Rev.Stat. Ann. § 12–36.5–103 (2001).

From this statute, Appellants conclude that the peer-review committees are extensions of the state medical board and that they are under the control and authority of that board. The statute clearly expresses the need for peer review and its importance to the regulation of the practice of medicine, as Appellants argue, but we conclude that the statute is insufficient to provide absolute immunity in a federal § 1983 action. *See Felder v. Casey,* 487 U.S. 131, 144, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) ("[The] burdening of a federal right, moreover, is not the natural or permissible consequence of an otherwise neutral, uniformly applicable State rule."); *Patsy v. Board of Regents of State of Fla.,* 457 U.S. 496, 511–16, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (holding that exhaustion of state administrative remedies was not a prerequisite for a remedy under § 1983).

Likewise, a mere statement by the Colorado legislature that peer-review commit-

tees are extensions of the state medical board's authority is insufficient to clothe those committees in the same immunity as the board itself. In order for these committees to be viewed as extensions of the medical board and worthy of similar immunity, the state board must exercise adequate oversight and authority over the peer-review committees. In this case there was no such oversight.

At first blush, the state board appears to claim authority over peer review at the hospital level. However, a more detailed reading of the statute reveals very little control by the state board over peer-review committees. For example, the statute requires that each committee have its own internal procedures and regulations, but it limits oversight by the state board to 1) a requirement that a copy of any recommendations made by a peer-review committee to a hospital governing board be forwarded to the state medical board, and 2) the right of the state medical board to request copies of the records of any peer-review-committee proceeding. *See* Colo. Rev.Stat. Ann. § 12–36.5–104(7)(f), (11) (2001). There is no requirement that the state board actually review the proceedings of any committee or the decision of any hospital governing board. There is likewise no explicit right to appeal to the medical board any decision made by a peer-review committee or governing board.

Without more, this statutory scheme lacks sufficient administrative oversight, control, and authority for peer-review committees to be considered extensions of the state board itself. Consequently, we decline to extend the same immunity enjoyed by the state board to the peer-review committee at Gunnison Valley Hospital.

## C. Precedent from Other Circuits

Appellants point to cases from other circuits where peer-review committees were granted absolute immunity, suggesting that these cases are indistinguishable from the present case. While the cases are similar in many respects, each of them involved slightly, yet significantly, different facts.

In *Kwoun v. Southeast Missouri Professional Standards Review Organization*, 811 F.2d 401 (8th Cir.1987), the members of the peer-review organization had no authority to impose sanctions or discipline themselves and were subject to the direct supervision of a federal agency, the Department of Health and Human Services. Additionally, the procedure outlined by the federal statute allowed for full administrative review. *Id.* at 409. Here, there is no mandatory review by the state agency, the discipline is administered at the hospital level, and there is no meaningful right of appeal or review in Appellee's particular circumstances.

In *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir.1999), the doctor performing the review had no authority to discipline anyone, could only make recommendations to the state medical board (which had the sole authority to discipline doctors), and the subject of the review was entitled to notice and a hearing before any disciplinary action could be taken. *Id.* at 250–51.

The present case is significantly different than the above cases. There are no significant procedural safeguards. Additionally, these other cases involved direct oversight by a government agency as well as a right to appeal to that agency. Here, there is very minimal and undefined oversight by the state medical board and no explicit right of appeal to that board.

We **AFFIRM** the district court's denial of absolute immunity.