**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ISSAM A. BEYDOUN; WAFA A.
ABDALLAH,

   *Plaintiffs-Appellants,*

   v.

CLARK CONSTRUCTION INTERNATIONAL,
LLC, a Maryland limited liability
company; JAMES A. HOOFF; LARRY J.
KELLER,

   *Defendants-Appellees,*

   and

THE CLARK CONSTRUCTION GROUP,
INCORPORATED, a Maryland
corporation; DEWBERRY & DAVIS,
INCORPORATED, a North Carolina
corporation; THE DEWBERRY
COMPANIES, INCORPORATED, a
Virginia corporation; SIDNEY
DEWBERRY; JAMES CLARK,

   *Defendants.*

No. 02-2154

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-02-851-A)

Argued: June 5, 2003

Decided: July 25, 2003

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Stephen F. Wasinger, WASINGER, KICKHAM & HAN-LEY, Royal Oak, Michigan, for Appellants. Stephen Michael Sayers, HUNTON & WILLIAMS, McLean, Virginia; Michael Evan Jaffe, THELEN, REID & PRIEST, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** David B. Albo, ALBO & OBLON, L.L.P., Springfield, Virginia, for Appellants. Jill Marie Dennis, HUNTON & WILLIAMS, McLean, Virginia; Gerald Zingone, THELEN, REID & PRIEST, L.L.P., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

In this diversity action, Issam A. Beydoun and his wife, Wafa A. Abdallah, allege a number of state law claims against Clark Construction International, LLC, one of its officers, and the officer of another company, arising out a "Joint Venture" between the parties for design and construction projects in the Middle East. The district court dismissed their amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed herein, we affirm.

### I.

The amended complaint asserts the following basic facts, which on review of a district court order granting a motion to dismiss under Rule 12(b)(6), we "accept[ ] as true[,] . . . view[ing] them in the light

most favorable to the plaintiff[.]" *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999) (citation omitted).

During the 1990s, Beydoun, an American citizen of Lebanese descent, formed a joint venture with the Clark Group, represented by James Hooff, and the Dewberry Group, represented by Larry Keller ("Hooff and Keller"). The purpose of the joint venture was to "pursue design and construction business in the Middle East." Beydoun, "[p]ursuant to the Joint Venture," opened offices in Beirut and "expended substantial sums to conduct business" for the joint venture. Keller and Hooff reimbursed Beydoun for some of the expenses by transferring funds both to joint venture entities and Beydoun's personal account. Throughout 1997 and 1998, the parties "met regularly and had constant communications about the Joint Venture and its business opportunities."

Beydoun and his family moved to Beirut. By the end of 1997, Beydoun wanted "some financial protection" in the event that Keller and Hooff "chose to move forward in the Middle East without him." The parties negotiated a "Severance Monetary Compensation Clause," signed by Beydoun, and (assertedly) Hooff for Clark Construction International and Keller for Dewberry and Davis. The Clause provided that, if Clark and Dewberry severed relations with Beydoun, he was entitled to a lump-sum payment of "a minimum" of $5 million and "a maximum" of $20 million. The following conditions applied for the Clause to be valid and payable: (1) Beydoun did not request and ask for the severance; (2) he quitclaimed and relinquished his rights to all money he was entitled to in specific countries and projects; and (3) he did not cause and warrant the severance.

Beydoun began arranging for subcontractors to work on a project in Doha, Qatar, the West Bay Complex, "which was being solicited by the Joint Venture." Subcontractors included Golden Light Company of Beirut ("Golden Light") and General Company for Woodwork and Decoration ("General"). Beydoun alleges that Keller and Hooff knew of the joint venture's relationships with both companies. In August 1998, Golden Light "delivered $100,000 to the joint venture for use as a bid bond, or security deposit, on plans provided to Golden Light so that Golden Light could bid for work on a potential

[J]oint [V]enture project in Qatar." In October 1998, General delivered a $50,000 bid bond for the same purpose.

By the end of 1998, Beydoun "had almost completely exhausted his personal assets, including funds borrowed from his family, to pay the expenses of the Joint Venture." Beydoun made "repeated requests" to Hooff and Keller to provide funds to the joint venture. In response, "Hooff and Keller repeatedly assured Beydoun that monies would be forthcoming and they urged Beydoun, in the interim, to use monies provided by Golden Light and General to tide the Joint Venture over until the Clark Group and the Dewberry Group funded operations." Beydoun then used the bid bonds for joint venture operations.

Hooff and Keller did not "fund[ ] the monies necessary to allow the Joint Venture to honor its financial commitments, including the commitments to Golden Light and General." When the joint venture did not repay Golden Light and General, they filed complaints against a joint venture entity and Beydoun as its representative. Golden Light alleged that one of the joint venture entities fraudulently induced it to submit a $100,000 bid bond. General alleged that one of the joint venture entities issued a $50,000 check that did not clear. Beydoun alleges that "[n]either the Golden Light complaint nor the General complaint is based on the use of the bid bond monies as such. Rather, each uses the failure to repay the bid monies, as the basis for complaining that the Joint Venture, and Beydoun as its representative, had engaged in fraudulent conduct." That fraudulent conduct included Beydoun's creation of a sham entity and rental of expensive offices "to create a false impression designed to fraudulently solicit funds from unsuspecting Lebanese businesses."

Beydoun was convicted of fraud and issuing a check without sufficient funds to cover it under the Lebanese Criminal Code. He spent two years in a Lebanese prison. During the pendency of this appeal, the Lebanese courts affirmed the convictions, which both sides agree are now final. Beydoun alleges that the "claims of fraud could have been readily disproved" if Hooff and Keller "had appeared in Beydoun's defense, confirmed the substantial nature of the Joint Venture, confirmed that Beydoun had been acting in accordance with directions from Hooff and Keller, and paid the monies due to Golden Light

and General." He alleges that Keller and Hooff's "abandon[ment]" caused Beydoun's false imprisonment.

In March 1999, Hooff and Keller both wrote letters to Beydoun in the Lebanese prison advising him that, although they had authorized him to use the bid bond monies for company-related expenses, Beydoun had also used the money on personal expenses. Keller and Hooff severed relations with Beydoun, asserted that he had "caused and warranted the severance to happen," and concluded that he was not entitled to any Severance Monetary Compensation under the agreement. (Keller and Hooff assert that their signatures on all documents, including these letters, are forgeries. However, they assume their validity for purposes of the motion to dismiss. Brief of Appellees at 17 n.5.) Beydoun also asserts that, while he was in prison, Hooff and Keller went to the joint venture's offices and took papers belonging to both the joint venture and Beydoun personally.

On February 19, 2002, Beydoun and Abdallah ("Beydoun") filed a law suit against the defendants in the present action, as well as other entities and officers of Clark and Dewberry, in the Eastern District of Michigan, where Beydoun and his wife reside. That court dismissed the action against all defendants, except the present defendants, for lack of personal jurisdiction, and then transferred the action to the Eastern District of Virginia, pursuant to 28 U.S.C.A. § 1404(a).[1] After the transfer of the case, Hooff and Keller moved to dismiss the complaint. The district court granted the motion, with leave to file an amended complaint.

On August 1, 2002, Beydoun filed an amended complaint alleging, *inter alia*, the above facts and asserting that they gave rise to claims of (1) breach of the severance agreement, (2) breach of fiduciary duties, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (4) tortious interference with advantageous business relationships, (5) civil conspiracy, (6) statutory conspiracy under the Virginia Code, and (7) tortious interference with advantageous business relationships. On September 4, 2002, the district court granted Hooff and Keller's motion to dismiss the amended

---

[1]The other entities are subject to a second proceeding pending in the Eastern District of Virginia.

complaint for failure to state a claim. Beydoun now appeals that dismissal.

## II.

We review dismissal of a claim by the district court under Rule 12(b)(6) *de novo. See Ostrzenski*, 177 F.3d at 251 (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). We "may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court." *Id.* (citing *United States v. Swann*, 149 F.3d 271, 277 (4th Cir. 1998)).[2]

As an initial matter, Beydoun argues that Michigan law governs his substantive claims. Although Hooff and Keller cite cases from both Michigan and Virginia, they do not challenge Beydoun's contention. The federal court in Michigan transferred this action to the Eastern District of Virginia pursuant to 28 U.S.C.A. § 1404(a), which permits a transfer for the convenience of the parties and witnesses to "any other district or division where [the civil action] might have been brought." After a transfer under § 1404(a), "the transferee court must follow the choice-of-law rules that prevailed in the transferor court." *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). When resolving a choice-of-law question, Michigan courts "apply Michigan law unless a rational reason to do otherwise exists." *Frydrych v. Wentland*, 652 N.W.2d 483, 485 (Mich. Ct. App. 2002) (citing *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466 (Mich. 1997)). Beydoun and Abdallah are residents of Michigan, and Beydoun asserts that Keller and Hooff dealt with him in Michigan when the parties created the joint venture. Brief of Appellant at 23. Accordingly, we agree with Beydoun that Michigan law controls the disposition of his claims.

---

[2]Because we affirm the dismissal of some counts on grounds differing from those relied upon by the district court, we do not discuss all of the district court's alternative grounds for dismissal.

### III.

### A.

Beydoun first alleges that Hooff and Keller breached the Severance Monetary Compensation Clause ("the Clause"). Hooff and Keller argue, *inter alia*, that this claim fails as a matter of law because the Clause "provides no mechanism to determine [the] actual amount . . . due to Beydoun in the event of a 'severance[,]'" and, therefore, the Clause constitutes an unenforceable agreement to agree. Brief of Appellees at 33-34.

The Clause, dated January 22, 1998 and signed by Beydoun, and (assertedly) Hooff (for Clark) and Keller (for Dewberry), provides:

> In consideration and acknowledgment of the efforts, time, money, and high level relations and contacts that have been put by Issam A. Beydoun in our endeavor and quest in the Arab world for 5 years, specifically in the Republic of Lebanon, Kingdom of Saudi Arabia, Hashimit Kingdom of Jordan, State of Qatar, Republic of Yemen. Taken into consideration also that we are in the process of negotiating and estimating the design and construction costs of the three projects: International Medical Center in Beirut, Lebanon (estimated at approximately 65 million U.S. dollars), Beirut Trade Center in Beirut, Lebanon (estimated at 65 million U.S. dollars), and the West Bay Complex in Doha, Qatar (estimated at 150 million dollars). If Clark Construction International INC. [sic] and Dewberry & Davis decide to sever relations and discontinue collaborating with Issam A. Beydoun in the Arab world, specifically in the countries mentioned above, Issam A. Beydoun is eligible and entitled to be paid by the two Corporations jointly, a lump sum Severance Monetary Compensation at a minimum of $5,000,000.00, five million U.S. dollars, and a maximum of $20,000,000.00, twenty million U.S. dollars.
>
> The Severance Monetary Compensation Clause will be valid and payable to Issam A. Beydoun under these terms:

1.  He did not request and ask for the severance.

2.  He quitclaim and relinquished his rights to all the money he is entitled to in all projects in the countries mentioned above at the time of severance. Specifically, the International Medical Center, Beirut Trade Center in Beirut, Lebanon, and the West Bay Complex in Doha, Qatar.

3.  He did not cause and warrant the severance.

Hooff and Keller argue that the Clause provides only a broad range of compensation, a "minimum" of $5 million and a "maximum" of $20 million, and left for future negotiations the material terms of the amount of compensation, if any, and the performance criteria to determine that compensation. The complaint concedes, at least implicitly, the omission of those terms by acknowledging that the parties "specifically agreed that the ultimate severance compensation would be determined based on the stage of the Joint Venture and the projects (identified in the Severance Agreement) which had been developed." Amend. Compl. ¶ 47.

Under Michigan law, "[t]o be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations." *Socony-Vacuum Oil Co., Inc. v. Waldo*, 286 N.W. 630, 632 (Mich. 1939) (internal quotation marks omitted). "'If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called "contract to make a contract" is not a contract at all.'" *Hansen v. Catsman*, 123 N.W.2d 265, 266 (Mich. 1963) (quoting 1 Corbin on Contracts § 29, currently found in § 2.8 (1993 ed.)).

In this case, the Clause does not specify the material terms of (1) the actual amount of compensation or (2) the method to calculate it. Rather, it only provides a broad range of $5 million to $20 million, tethered to no performance criteria. The Clause provides only that the parties "are in the process of negotiating and estimating the design and construction costs of the three projects," which in no way provides a method or formula for a fact-finder to compensate Beydoun

for the alleged breach. Moreover, the Clause's "consideration and acknowledgment of the efforts, time, money, and high level relations and contacts" by Beydoun in the prior five years does not save the indefiniteness because it constitutes inadequate past consideration. *Easley v. Mortensen*, 121 N.W.2d 420, 422 (Mich. 1963) ("[P]ast consideration . . . [cannot] support the claimed promises or contract."). Finally, the complaint itself concedes that the Clause does not contain an agreement on the amount of compensation or a method for calculating it. Amend. Compl. ¶ 47 ("Hooff, Keller and Beydoun specifically agreed that the ultimate severance compensation would be determined based on the stage of the Joint Venture and the projects (identified in the Severance Agreement) which had been developed."). Thus, the breach of severance agreement count fails to state a claim.[3]

B.

Beydoun next alleges that Hooff and Keller "owed fiduciary duties to Beydoun as their fellow joint venturer" and that they breached those fiduciary duties by "abandon[ing] Beydoun and refus[ing] to offer evidence in his behalf." Amend. Compl. ¶¶ 199, 201. Hooff and Keller argue, *inter alia*, that the complaint does not allege all of the requisite elements of a joint venture, the relationship on which the complaint bases the breach of fiduciary duties.

A joint venture under Michigan law has six elements: (1) "an agreement indicating an intention to undertake a joint venture," (2) "a joint undertaking of," (3) "a single project for profit," (4) "a sharing of profits as well as losses," (5) "contribution of skills or property by the parties," and (6) "community interest and control over the subject matter of the enterprise." *Berger v. Mead*, 338 N.W.2d 919, 922

---

[3] *Opdyke Investment Company v. Norris Grain Company*, 320 N.W.2d 836 (Mich. 1982), on which Beydoun relies, does not undermine this conclusion. *Opdyke*, which cited with approval *Hansen* and *Socony-Vacuum*, involved a "Letter of Intent" and the question of whether the parties "[i]ntended to be bound only by a formally written and executed final document[.]" *Id.* at 838. In the instant case, we address the different question of whether what Beydoun maintains is the parties' formal, final written document lacks material terms.

(Mich. Ct. App. 1983) (internal quotation marks omitted). "Whether or not a joint venture exists is a legal question for the trial court to decide." *Id.* (citation omitted).

First, the amended complaint does not allege that the parties agreed to a "sharing of profits as well as losses" by the parties. *See Meyers v. Robb*, 267 N.W.2d 450, 454 (Mich. Ct. App. 1978) (affirming dismissal of complaint because "no provision for the mutual sharing of profits and losses"). In his brief, Beydoun fails to point to any allegation of his complaint asserting this element, and our review of the complaint similarly finds none.

Second, the complaint does not allege that the parties shared "control" over "the subject matter" of the joint venture. *Berger*, 338 N.W.2d at 922. Rather, the complaint's explanation of the reason for the Severance Monetary Compensation Clause belies any joint control, placing total control in the hands of Keller and Hooff: "[Beydoun] wanted some financial protection in the event that the Clark Group or the Dewberry Group chose to move forward in the Middle East without him." Amend. Compl. ¶ 41.

Finally, the alleged joint venture did not involve "a single project." *Berger*, 338 N.W.2d at 922; *Summers v. Hoffman*, 69 N.W.2d 198, 201 (Mich. 1955) ("A single project was involved, namely, the development and sale of two large parcels of real estate."). The complaint alleges that the parties formed the joint venture "to pursue design and construction business in the Middle East," and acknowledges that specific projects (and parties) had not been identified at the time of the formation of the joint venture. Amend. Compl. ¶¶ 22, 27.

Because the complaint does not allege all of the requisite elements of a joint venture, we must affirm the district court's dismissal of the breach of fiduciary duties claim.

## C.

Beydoun also alleges a claim for intentional infliction of emotional distress. Amend. Compl. ¶¶ 160-68. He asserts that "Hooff and Keller engaged in outrageous conduct which caused the imprisonment of

Beydoun and destroyed Beydoun's reputation," with the conduct including the failure to assist Beydoun by providing truthful evidence and funding "admitted obligations," abandonment of Beydoun, and secretion of evidence. *Id.* We agree with the district court that this claim fails as a matter of law.[4]

As an initial matter, the Michigan courts have expressed doubt as to whether intentional infliction of emotional distress even exists as a cause of action in Michigan. *See Smith v. Calvary Christian Church*, 614 N.W.2d 590, 686 n.7 (Mich. 2000) ("We have not been asked to, and do not, consider whether the tort of intentional infliction of emotional distress exists in Michigan."); *see id.* 690 (Weaver, C.J., concurring) ("As to the plaintiff's tort claim of intentional infliction of emotional distress, I note that this Court has not recognized or adopted that tort, *see Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985), and does not do so here.").

To the extent Michigan does recognize intentional infliction of emotional distress, the required elements are: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999) (citation omitted). "[I]t is initially for the court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery." *Doe v. Mills*, 536 N.W.2d 824, 834 (Mich. Ct. App. 1995) (citation omitted).

We agree with the district court that Beydoun has not alleged the requisite extreme and outrageous conduct. "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 604 N.W.2d at 674 (citation omitted). Moreover, "[i]t is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by

---

[4]Beydoun did not appeal the dismissal of his negligent infliction of emotional distress claim.

'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* (citation omitted).

Beydoun alleges that Hooff and Keller did not "offer[ ] to assist Beydoun by providing truthful evidence which would have exonerated Beydoun and secured his freedom from imprisonment," "secreted evidence which would have assisted Beydoun's defense," "retained a lawyer who urged Beydoun not to implicate Clark International or Dewberry & Davis," and "did not fund admitted obligations with full knowledge that funding those obligations would allow Beydoun to be freed from prison." Amend. Compl. ¶ 162. Hooff and Keller had no duty to assist Beydoun in his effort to exonerate himself, even assuming that the facts alleged would constitute outrageous conduct in the face of such a duty. Having failed to sufficiently allege a joint venture, the parties had only a contractual relationship, and Beydoun points to no contractual obligation to assist him. Thus, we affirm the district court's dismissal of this claim because Beydoun fails to allege conduct "regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 604 N.W.2d at 674 (citation omitted).

D.

In addition, Beydoun asserts a claim for tortious interference with advantageous business relationships. In support of that claim, he alleges that he had "established a substantial network of important business contacts and relationships throughout the Middle East," that these relationships were "with some of the most prosperous and prominent persons in the Middle East," including, *inter alia*, Prince Khaled Bin Turki Bin Abdul of Saudi Arabia and Queen Noor, that "[t]hese relationships were not limited to relationships which would result in construction and engineering contracts that were subject to the Joint Venture Agreement," that Keller and Hooff "allowed Beydoun to be imprisoned and convicted," and that the "imprisonment and conviction had the effect of substantially impairing Beydoun's relationships with business contacts and relationships in the Middle East." Amend. Compl. ¶¶ 206-11.

The elements of a claim for tortious interference are: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant;

(3) intentional interference causing or inducing a termination of the relationship or expectancy; and (4) resultant actual damage. *See Lucas v. Monroe County*, 203 F.3d 964, 978-79 (6th Cir. 2000) (citing *Wilkerson v. Carlo*, 300 N.W.2d 658, 659 (Mich. Ct. App. 1980)); *see also N. Plumbing & Heating, Inc. v. Henderson Bros., Inc.*, 268 N.W.2d 296, 299 (Mich. Ct. App. 1978).

The amended complaint merely alleges that Beydoun had a "substantial network of important business contacts and relationships throughout the Middle East," and identifies some of those business contacts. The complaint does not identify, even in vague or conclusory fashion, any expectancy or future contract arising out of these contacts. Under Michigan law, "'[t]he [business relationship or expectancy of a relationship] must be a reasonable likelihood or a probability, not mere wishful thinking.'" *Lucas*, 203 F.3d at 979 (quoting *Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341, 348 (Mich. Ct. App. 1984)). "To demonstrate such a realistic expectation, Plaintiffs must prove an anticipated business relationship with an identifiable class of third parties." *Id.* (reasonable expectancy of an economic relationship with stranded motorists who arranged for towing services via the call list maintained by the Sheriff's Department) (citation omitted); *see also Trepel*, 354 N.W.2d at 344, 348 (valid expectancy of approval of hospital's application for a bond issue from the Michigan State Hospital Finance Authority and Municipal Finance Commission). Given the insufficiency of the amended complaint, we affirm the district court's dismissal of this claim.

E.

Finally, Beydoun asserts a civil conspiracy claim, alleging that Hooff and Keller "conspired for the unlawful purpose of causing Beydoun to be exposed to false imprisonment and financial ruin." Amend. Compl. ¶ 180. He alleges that, as part of the conspiracy, Keller and Hooff "withheld material evidence, refused to offer truthful evidence which would have exonerated Beydoun, . . . secreted evidence which would have exonerated Beydoun," and "mis[led] Beydoun into placing himself in a position where Defendants could allow him to be imprisoned and later deny he was entitled to the millions of dollars in compensation he had already earned." Amend. Compl. ¶¶ 181, 184.

The essential elements of a civil conspiracy are (1) a concerted action, (2) by a combination of two or more persons, (3) to accomplish an unlawful purpose, (4) or a lawful purpose by unlawful means. *Mays v. Three Rivers Rubber Corp.*, 352 N.W.2d 339, 341 (Mich. Ct. App. 1984).

We agree with the district court that the complaint fails to allege that Keller and Hooff acted in concert. "[M]ere conclusions that fail to offer direct or circumstantial evidence of an unlawful agreement between the alleged conspirators" are insufficient. *Sankar v. Detroit Bd. of Educ.*, 409 N.W.2d 213, 218 (Mich. Ct. App. 1987). In addition, the Michigan courts have held that "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate actionable tort." *Early Detection Ctr. v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1987). When a plaintiff "fail[s] to state any actionable tort theories in [his] . . . amended complaint, the conspiracy theory must also fail." *Id.* Because we affirm the district court's dismissal of Beydoun's other claims, the civil conspiracy claim also fails as a matter of law.[5]

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[5]Despite Beydoun's position that Michigan law governs his claims, the amended complaint also alleges a claim for violation of Virginia's business conspiracy statute, Va. Code Ann. § 18.2-500, which permits a suit for civil relief based on a violation of § 18.2-499, which provides for a misdemeanor conviction for conspiring to injure others in their reputation, trade, business, or profession. As an initial matter, the text of § 18.2-500 requires a violation of § 18.2-499, and the complaint alleges none. *See* § 18.2-500 ("Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained[.]"). In any event, because we agree with Beydoun that Michigan law governs his complaint, we affirm the dismissal of this Virginia law claim.