HANSEN *v.* CATSMAN.

1. CONTRACTS—AGREEMENT TO MAKE A CONTRACT.
   An agreement to make a contract is not a contract at all, where the document yet to be made is to contain any material term that is not already agreed on.

2. SAME — UNCERTAIN AGREEMENT CONTEMPLATING ERECTION OF BUILDING AND LEASE THEREOF.
   Trial judge's determination as a matter of law that written agreement did not constitute a contract *held,* correct, where the agreement stated that defendant *contemplates* erecting a building, that plaintiff *contemplates* leasing it, provided the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 12 Am Jur, Contracts § 24.

plans, specifications, and design that *were not yet formalized* were acceptable to both parties, since the instrument lacked basic certainty.

3. WORDS AND PHRASES—CONTEMPLATES.
    Ordinarily the word *contemplates* indicates an expectation or intention rather than a promise or undertaking.

Appeal from Genesee; Roth (Stephen J.), J. Submitted December 6, 1962. (Calendar No. 110, Docket No. 49,663.) Decided September 4, 1963.

Case by Donald A. Hansen against Samuel M. Catsman, Catsman Realty Company, a Michigan corporation, and Jack H. Herrlich, doing business as Tavern Center, for breach of contract and inducing breach of contract to build and lease a store building. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Burroughs & Buck,* for plaintiff.

*Elliott, Elliott & Winegarden* (*Philip Elliott,* of counsel), for defendants Catsman and Catsman Realty Company.

*Cline & George,* for defendant Herrlich.

SMITH, J. Plaintiff brought action for damages for breach of contract against defendant Catsman; and for damages for interference with contractual rights by defendant Herrlich. Proofs in the trial court were taken on, and limited to, the issue of whether there was a contract between the parties. A judgment in defendants' favor was rendered upon motion for directed verdict, from which plaintiff appeals.

It is alleged by plaintiff that he and the Catsman Realty Company through its president, Samuel M.

Catsman, entered into an agreement whereby the realty company, for certain stipulated rental payments, would construct and lease a building on property owned by it, said building to be operated by plaintiff as a drugstore.

The record indicates that an agreement was prepared by plaintiff; it was modified at the suggestion of defendant Catsman, and signed by both parties on January 16, 1959. The agreement provided that defendant Catsman "contemplates" erecting upon certain real estate a brick and masonry building for use as a drugstore. The agreement expressed, similarly, that plaintiff "contemplates" leasing said building. Particular note is made of the use of the word "contemplates." Approximate dimensions were set forth in the agreement which further provided building "to be erected in accordance with plans and specifications and design not as yet formalized." An additional stipulation was this: "provided that said plans, specifications, and design are acceptable to both parties that a lease shall be entered into between the parties." The agreement stated further that "if for any reasonable reason the plans, specifications and design of said building are unacceptable to either party that the $1,000 good faith money shall be returned to the first party by the second party."

The record indicates various steps were taken by the parties pursuant to the agreement, including rezoning of the property, an attempt to transfer plaintiff's liquor license, retaining an architect, procurement of plans and specifications, and the taking of bids. The record further indicates that plaintiff was unsuccessful in his attempt to obtain financing. On May 19, 1960, defendant Catsman returned the $1,000, along with notice of his election to terminate the agreement. Subsequent to this notice of termi-

nation, defendant Catsman entered into a similar agreement with defendant Herrlich.

The sole question for the determination of this Court appears to be whether the trial court erred, as a matter of law, in finding that the subject instrument was not an enforceable contract.

It is well recognized that it is possible for parties to make an enforceable contract binding them to prepare and execute a subsequent agreement. In such a case, where agreement is expressed on all essential terms, the instrument is considered a contract, and is considered a mere memorial of the agreement already reached. 1 Corbin, Contracts, § 29. It is further to be noted, however, that "If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called 'contract to make a contract' is not a contract at all." Corbin, *supra,* p 68. See, also, 6 MLP, Contracts, § 27.

As noted in 1 Restatement, Contracts, § 26, p 33:

"Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions."

An agreement was held unenforceable in *Socony-Vacuum Oil Co., Inc.,* v. *Waldo,* 289 Mich 316. The Court at pages 323, 324, cited 12 Am Jur, Contracts, § 24, p 521: "To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations."

Regarding the agreement in the present case, several essential terms were left for future negoti-

ations, such as, for example, the requirement that plans, et cetera, be acceptable to both parties. It was stated in the agreement, that plans were not, as of the time of signing, formalized. This left, perhaps, the most significant feature of the venture open for further discussion and negotiations. In a like manner, the instrument additionally supports this construction in its provision for forfeiture "if for any reasonable reason the plans, specifications and design are unacceptable to either party." What may constitute a "reasonable reason" is left to conjecture. At the very least, it is a matter for future negotiations, within the proscriptions of the *Socony-Vacuum Case, supra.*

In addition to matters left for future negotiations, there is yet another reason why the trial judge was correct in holding that the "agreement" was but a memorandum of the intentions of the parties. The use of the word "contemplates" in several significant clauses, cited above, is meaningful in law. In an opinion from the bench, denying a new trial, Judge Roth said:

"I found that the repeated use of the word 'contemplates' is not only apt but also clearly brings the instrument into legal focus, and I had recourse not to a law book but just to a common garden variety dictionary to find out what we mean by 'contemplate'.

"To contemplate is to consider and have in view in reference to a future act or event, to intend.

"And I held that here that future act or event never occurred."

Ordinarily, the word "contemplates" indicates an expectation or intention rather than a promise or undertaking. *Read* v. *Fox,* 119 App Div 366 (104 NYS 251).

Whatever may have been the true intentions of the parties to the instrument in question, the vehicle

used lacks the basic certainty which, under settled principles, is required before sanctions may be imposed. The trial judge found that inasmuch as the instrument upon which the cause of action was grounded was insufficient, as a matter of law, then there was no question of fact for the jury.

Affirmed. Costs to defendants.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

O'HARA, J., took no part in the decision of this case.