PROFESSIONAL FACILITIES CORPORATION *v.* MARKS.

1. CONTRACTS—OMISSION OF ESSENTIAL TERM IN INSTRUMENT TO PROVIDE FINANCING.

> Holding of trial court that exhibit attached to plaintiff's declaration in action to recover commission for obtaining funds with which to build and finance a nursing home constituted no contract at all in that it was vague, lacked mutuality, and imposed no obligations on anybody *held*, proper, especially where it is admitted that the instrument failed to specify the amount of financing to be procured by plaintiff for defendants, there being an omission to agree upon a certain amount, an essential term.

REFERENCES FOR POINTS IN HEADNOTES
[1]  12 Am Jur, Contracts §§ 12–15, 64, 69.
[2]  12 Am Jur, Contracts § 24.
[3]  41 Am Jur, Pleading § 390.
[4]  41 Am Jur, Pleading §§ 330–334, 340–343.

2. Same—Contract to Make Subsequent Agreement.
    Parties may make an enforceable contract binding them to pre-
        pare and execute a subsequent agreement provided there is
        agreement expressed on all essential terms of the subsequent
        agreement.

3. Pleading—Defects—Waiver—Motion to Dismiss.
    Defects in a pleading, such as failure to state a case, are not
        waived by failure to raise objection within time provided by
        rule; as motion to dismiss for such reason may be made at any
        time (GCR 1963, 117).

4. Same—Motion for Summary Judgment—Motion to Dismiss—
    Failure to State a Cause of Action.
    The motion for summary judgment under the present court rules
        embodies the old motion to dismiss under former rules as well
        as the old motion for summary judgment for failure to
        state a cause of action, and the combination in the rule does
        not serve to diminish the former force and effect of a motion
        to dismiss or to alter the time when it may effectually be made
        (GCR 1963, 117).

Appeal from Macomb; Noe (Alton H.), J. Sub-
mitted April 8, 1964. (Calendar No. 19, Docket
No. 50,241.) Decided November 2, 1964.

Assumpsit by Professional Facilities Corporation,
a Michigan corporation, against John Marks and
others for fee in securing financing for construction
purposes. Cause dismissed on motion. Plaintiff
appeals. Affirmed.

*C. W. Hatfield,* for plaintiff.

*Grossman, Hyman & Grossman (J. Leonard
Hyman,* of counsel), for defendants.

Dethmers, J. Plaintiff sued to recover the
amount of a fee alleged to be due it from defendants
under a written contract. Plaintiff's declaration
alleged that defendants had promised, by the terms
of the contract, to pay it a 2% fee on money to be

obtained by it, from some investor, for defendants; that it was to be used by them for the purpose of building and financing a nursing home; that they promised to do certain things to facilitate and make such transaction possible with the investor whom plaintiff would persuade to furnish such financing; that plaintiff procured an investor ready, willing, and able to finance the project, but that defendants failed to perform their obligations under the contract, and informed plaintiff that they refused to proceed further with the deal and had procured financing elsewhere. Accordingly, plaintiff asked judgment for $3,200, being 2% of the sum of $160,000 which plaintiff alleged was the amount agreed upon between them for the project. Attached to plaintiff's declaration, as an exhibit, was a copy of the alleged contract on which suit was based. It read as follows:

## "Agreement

"Whereas, John Marks, Fergus B. Hamilton and Williamina, his wife, and Peter Milroy all of the city of Detroit, Michigan hereinafter known as the lessee desire to own and operate a certain health facility and have requested sale and leaseback financing.

"Whereas, Professional Facilities Corporation, a Michigan corporation with offices at 22208 John R. street in the city of Hazel Park, Michigan hereinafter known as the company is engaged in the business of providing a package of the various professional services which may be involved in any health facility project. The purpose of this agreement is to broadly set forth the terms of the agreement between these parties.

"Now therefore, it is agreed by and between these parties, their successors and assigns as follows:

"I

"It is understood by the parties hereto that the term investor as hereinafter used in this agreement shall represent the party or parties as designated by the company who will provide the necessary funds for this project according to the terms of the submission and request for such financing.

"II

"The first step in financing of this project is the preparation of the submission or request for said financing. It is agreed by the lessee that it shall provide and pay for all data, reports, land surveys, financial statements, appraisals and such other materials or information as may be or become necessary or proper to the submission in accordance with reasonable practices of the investment field. Some of the major items are as follows:

"A. Assurance of title to the land and an agreement to convey to the investor upon commitment.

"B. Intent to lease for a period of 15 years on a set net lease for monthly rental of 1.182% of the amount requested in the submission.

"1. Intent to lease to include personal assurance of the individual lessees.

"2. Intent to lease to provide for option to lessees to purchase at end of lease at 55% of amount invested by the investor on a 15-year 6% land contract or cash.

"3. Intent to lease to provide for investor to have control of all insurance on premises or operations provided this does not exceed market cost. Insurance to be paid for by lessee.

"C. Architects preliminary plans, architectural rendering, and architects cost estimate.

"D. Where possible a bid by a recognized contractor on a lump sum or upset price contract.

"E. Rental to commence upon issuance of certificate of occupancy and to continue for 180 months.

"III

"Upon receipt of the commitment by the investor conforming to the terms of this agreement or accepted by it, the lessees agree to do the following:

"A. To pay to the company a fee of 2% of the amount of the funds requested or accepted by it.

"B. To execute the lease in accordance with the provisions of the commitment.

"C. To convey the unencumbered fee of the parcel of land to the investor in accordance with the commitment.

"In witness whereof, we have hereunto set our hands and seals this 10th day of November, 1961.

> "/s/ JOHN MARKS,
> /s/ F. B. HAMILTON,
> /s/ PETER MILROY,
> /s/ W. M. HAMILTON,
> PROFESSIONAL FACILITIES CORPORATION,
> By /s/ JOHN F. RIPPLINGER,
> Vice President
> "11/10/61"

Defendants filed answer, alleging affirmative matters in defense. It included as a special defense the following:

"Special Defenses

"Your defendants will rely upon the following defenses:

"That the alleged exhibit under which plaintiff predicates its claim and seeks to recover is invalid and unenforceable for the reason that same is vague, lacks mutuality, and is totally without consideration, and consequently, for the foregoing reasons is unenforceable."

Pretrial was had. The court's statement thereof contained the following:

"Plaintiff seeks to recover in assumpsit for commission due for services rendered. Defendant joins issue in answer and asserts affirmative defense."

The suit came on for trial and a jury was empanelled. Defendants then moved to dismiss on the pleadings because the alleged contract on which suit was brought, as set forth in the copy attached to plaintiff's declaration, constituted no contract at all, was vague and lacked mutuality, and imposed no obligations on anybody. The court granted defendants' motion. Plaintiff appeals.

We think that defendants' contention and the lower court's holding that the quoted instrument was not a contract and bound no one to anything definite or specific were well taken. It was and is, at most, a memorandum of intention to reach an agreement later. This the plaintiff's attorney acknowledged in open court when the court pointed out that the alleged contract did not specify the amount of financing to be procured by plaintiff for defendants, but provided only that defendants should pay plaintiff "2% of the amount of the funds requested or accepted by it." Plaintiff's counsel conceded that the instrument left it open for defendants to decide how much to request or accept.

The agreement, if any, of defendants to pay plaintiff, as expressed in the words "2% of the amount of the funds requested or accepted" could never ripen into an obligation to pay until defendants should request or accept funds. While plaintiff's declaration alleged that the amount of financing agreed upon was $160,000, the instrument alleged by plaintiff to be the contract on which suit was brought, refutes the allegation by disclosing that no amount was agreed upon. There is no allegation that defendants ever requested or accepted a certain amount. The conditions upon which defendants' liability for a fee were to depend are not alleged to have been fulfilled at any time. In *Hansen* v. *Catsman,* 371 Mich 79, 82, this Court said:

"It is well recognized that it is possible for parties to make an enforceable contract binding them to prepare and execute a subsequent agreement. In such a case, where agreement is expressed on all essential terms, the instrument is considered a contract, and is considered a mere memorial of the agreement already reached. 1 Corbin, Contracts, § 29. It is further to be noted, however, that 'If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called "contract to make a contract" is not a contract at all.' Corbin, *supra,* p 68. See, also, 6 MLP, Contracts, § 27."

So here, a material term had not yet been agreed upon. The alleged contract attached to the declaration, upon which suit was based, is not a contract at all. See, also, *Socony-Vacuum Oil Co., Inc.,* v. *Waldo,* 289 Mich 316.

Question is raised as to the timeliness of defendants' motion. In *L. J. Mueller Furnace Co.* v. *Wayne Circuit Judge,* 226 Mich 672, it was held that defects in a pleading, such as failure to state a case, are not waived by failure to raise objection within time provided by rule. Motion to dismiss for such reason could be made at any time. GCR 1963, 117 embodies the old motion to dismiss under former rules as well as the old motion for summary judgment for failure to state a cause of action. This combination in the rule does not serve to diminish the former force and effect of a motion to dismiss or to alter the time when it may effectually be made. Moreover, in this particular case, defendants had made an earlier motion to dismiss, based on essentially the same grounds, but did not bring it on for hearing before because of counsel for plaintiff's statement to defense counsel that, by mistake, the wrong exhibit had been attached to the declaration

as the alleged contract and that he would amend to attach the proper exhibit. This was done, but defendants' position was that it was no better than the first insofar as stating a cause of action was concerned. The lower court apparently agreed. So do we.

Affirmed. Costs to defendants.

KAVANAGH, C. J., and KELLY, BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.