### BRODSKY v. ALLEN HAYOSH INDUSTRIES, INC.

1. CONTRACTS—AGREEMENT TO MAKE A CONTRACT.
   An agreement to make a contract is not a contract at all, where the document yet to be made is to contain any material term that is not already agreed on.

2. SAME—FUTURE CONTRACT MUST BE COMPLETE TO BE ENFORCEABLE.
   To be enforceable a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations.

3. SAME—LANDLORD AND TENANT—BUILDING SPECIFICATIONS—IMPLIED TERMS.
   "Agreement to enter into a lease" which contained the names of the parties, an adequate description of the premises, length of term and amount of rent was binding, notwithstanding that building specifications, other than amount of factory and air-conditioned office space, were not included in the agreement since a physical plant reasonably suited to the defendant tenant's needs was reasonably implied.

4. LANDLORD AND TENANT—BREACH OF LEASE—MEASURE OF DAMAGES—RENT—PROFITS.
   Generally rental value, not profits, is the usual measure of damages for breach of covenants to lease, or of contracts and covenants with relation thereto, but profits may be recovered where

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts § 26 et seq.
Formal or written instrument as essential to complete contract when the making of such instrument is contemplated by parties to verbal or informal agreement. 122 ALR 1217, 165 ALR 756.
[3] 32 Am Jur, Landlord and Tenant § 28 et seq.
[4-6, 8, 9, 11] 32 Am Jur, Landlord and Tenant §§ 31-33, 161-163.
Measure of damages for breach by lessor of contract to lease or to put lessee into possession. 104 ALR 132, 88 ALR2d 1024.
[7, 10] 22 Am Jur 2d, Damages §§ 12, 46 et seq.
[12] 5 Am Jur 2d, Appeal and Error § 1009 et seq.

they were an element of the contract, provided they are not speculative or conjectural or incapable of estimation.

5. SAME—BREACH OF LEASE—MEASURE OF DAMAGES.

Damages allowable for breach of a lease are designed to be compensatory only, placing the party in the position he would have occupied if the breach had not occurred, the allowance being the difference between the real value and the contract price.

6. SAME—BREACH OF LEASE—ERECTION OF BUILDING—MEASURE OF DAMAGES.

A lessor who made an agreement to erect a building to suit the needs of the prospective tenant would be entitled to a different measure of damages for the tenant's breach of the lease than the difference between the real value and the contract price in order to be compensated.

7. CONTRACTS—BREACH—DAMAGES.

The purpose of awarding damages for breach of a contract to compensate for the harm done includes the effort to put the injured party in as good a position as he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with the harms that he had no reason to foresee when he made the contract.

8. SAME—BREACH—ERECTION OF BUILDING—DAMAGES.

Landlord's contention that in addition to sums awarded for architect's fees and lost rents for apartments razed to permit erection of factory for defendant, plaintiff was entitled to the value of the demolished houses, the cost of razing them, and cost of bulldozing and removing trees from the land *held*, untenable, in action for breach of agreement to enter into a lease which had imposed responsibility upon landlord to erect the building and to bear all the costs of the improvement.

9. SAME—LANDLORD AND TENANT—BREACH—DAMAGES—PROFITS.

Measuring damages by the profits plaintiff landlord lost because of defendant lessee's breach *held*, to compensate the plaintiff for defendant's breach of the agreement to lease building to be erected on premises after demolition of income-producing buildings and completed on a specified date, where some 5 months before the completion date plaintiff was notified by defendant that latter was not going to comply with the agreement and plaintiff continued construction operations for another 4 months.

10. SAME—BREACH OF EXECUTORY CONTRACT—MEASURE OF DAMAGES.

The measure of damages for the breach of an executory contract is the difference between the contract price and what it would have cost the plaintiff to perform it.

11. SAME—BREACH—COMPUTATION OF DAMAGES—PROFITS.

Lost profit for defendant's breach of contract to enter into a lease is computed by subtracting the expenses, as determined by acceptable accounting procedures, that plaintiff would have incurred in fulfilling his obligation from the total rentals defendant would have paid under the terms of the contract for the period of time before replacement tenant assumed occupancy at same rent, less credit for security deposit.

12. COSTS—REMAND—DAMAGES.

Costs are awarded plaintiff-appellant upon affirmance of liability of defendant appellee for breach of contract but case is remanded for redetermination of damages.

Appeal from Macomb; Spier (James E.), J. Submitted Division 2 May 12, 1965, at Detroit. (Docket No. 210.) Decided November 15, 1965. Rehearing denied December 16, 1965. Leave to appeal denied by Supreme Court February 22, 1966. See 377 Mich 702.

Declaration by Herman Brodsky against Allen Hayosh Industries, Incorporated, a Michigan corporation, for breach of an "Agreement to Enter into a Lease". Judgment for plaintiff. Appeal by plaintiff contending that damages were improperly assessed. Cross-appeal by defendant contending agreement was not a contract. Affirmed on the issue of validity of contract; reversed on the measure of damages.

*Gottlieb & Silitch* (*George Silitch,* of counsel), for plaintiff.

*Armstrong, Helm, Marshall & Schumann* (*John F. Rooney,* of counsel), for defendant.

McGREGOR, J. Herman Brodsky, the owner of a lot with two small residential buildings, and two

officers of the defendant corporation signed a document, here at issue, on January 28, 1960. The instrument was entitled "Agreement to Enter into a Lease" and referred to the plaintiff as landlord and to the defendant as tenant. By the terms of this instrument, the landlord agreed to grant and the tenant agreed to accept a lease according to the terms and conditions set forth in the instrument, which recited the legal description of the property, the term of the lease, the rental (which was 10 cents per square foot per month, or approximately $1,550 per month) and included the following provision, which is the source of the controversy:

"The landlord agrees to construct on said premises a factory building containing approximately 14,400 square feet of factory space, and 1,100 square feet of air-conditioned offices, according to plans and specifications to be attached to the lease when executed, reserving to the tenant the choice of minor modifications."

This instrument also provided for $9,000 security deposit; $1,000 to be paid by the intended lessee at the signing of the agreement; $4,000 upon completion of building plans; and an additional $4,000 upon completion of the building. It also required the lease to contain all the provisions of the Detroit Real Estate Board Form—Business Property Lease. The premises were to be ready October 1, 1960, but rental was to begin at occupancy if completion were delayed.

In compliance with the terms of this agreement, the plaintiff proceeded to clear the land. However, on May 9, 1960, plaintiff Brodsky was informed by the defendant's attorneys that defendant was not going to comply with the agreement. Plaintiff won a judgment for breach of contract before the trial court sitting without a jury. He brought this appeal,

however, to recover a larger award of damages. The defendant corporation cross-appealed, contending that the agreement was not a binding contract.

The basic principle on preliminary agreements for the construction and lease of business premises is this:

"If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made." *Professional Facilities Corp.* v. *Marks* (1964), 373 Mich 673, 679, quoting with approval *Hansen* v. *Catsman* (1963), 371 Mich 79.

In the *Hansen Case,* the Court held that the agreement, which described the lot and type of building to be erected, fixed the length of term and the rental, and required the intended lessee to deposit $1,000 in security, was not a binding contract because the language used was that of contemplation rather than promise or obligation.   This same principle has been stated in another form:

"To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations." *Socony Vacuum Oil Co., Inc.,* v. *Waldo* (1939), 289 Mich 316, 323, quoting 12 Am Jur, Contracts, § 24, p 521.

The language of present agreement in the instrument before us contrasts strongly with the language of speculation and possibility in the *Hansen Case.* Although the parties before us never actually agreed upon the building specifications, this Court is not of the opinion that the parties intended formulation of specifications to be a prerequisite to the binding force of the contract.

*Long* v. *Mayor, Recorder and Aldermen of Battle Creek* (1878), 39 Mich 323, held valid a contract

for the construction of a bridge described only as "good" and without any specification of material or design. *Bushman* v. *Faultis* (1915), 184 Mich 172, held a lease to be a binding agreement, even though it omitted the rental due date and the time of conveyance in the event that the lessee exercised his option to purchase. The court stated that the agreement was precise enough even for specific performance because the following elements were present (p 179):

1. names of parties to the lease;
2. adequate description of the premises;
3. length of term and amount of rent; and
4. sale price upon exercise of option.

The agreement which the plaintiff Brodsky and the defendant corporation signed contained all of these elements, except the fourth which is not relevant to this case. The defendant contends that building specifications are an essential ingredient to a binding contract. The agreement, however, did not on its face leave anything to speculation but specified the amount of factory and air-conditioned office floor space. This agreement would imply a physical plant reasonably suited to defendant's manufacturing and office needs. No more certain specifications are needed for purposes of enforcing this lease agreement.

The question of damages remains. Before defendant repudiated the agreement plaintiff had demolished the residences, cleared the land, and hired an architect. Plaintiff proceeded to construct the new building until September, 1960, when the negotiations with the defendant corporation were discontinued. Plaintiff's diligent search for a new tenant was not successful until November, 1961, when he obtained a new lessee to commence occu-

pancy January 1, 1962, at the same rental as defendant was to pay.

The judge awarded as damages $800 for the architects' fee and $2,800 as lost rents for the razed apartments, computed at $140 per month for 20 months. Plaintiff contends that he is entitled to an additional $15,100 for the value of the demolished houses, $300 for the cost of razing, and $407 for the cost of bulldozing and removing trees from the land.

"Generally, it may be said that rental value, and not profits, is the usual measure of damages for breach of covenants to lease, or of contracts and covenants with relation thereto. Profits may be recovered, however, where they were an element of the contract, provided they are not speculative or conjectural or incapable of estimation."

"Breach of contract by a tenant or lessee is very much like a breach by the purchaser of a contract of sale and purchase. The lessee agrees to buy the use of the premises or thing rented and fails to perform his contract, and as in the case of a breach of an agreement to purchase, the damages allowed are designed to be compensatory only, placing the party in the position he would have occupied if the breach had not occurred, the allowance being the difference between the real or market value and the contract price, and not the profits which might have accrued to the lessor." 32 Am Jur, Landlord and Tenant, § 161, p 157.

The contract at issue here is different from an ordinary lease. It required the lessor to erect a building to suit the needs of the prospective tenant. The lack of a market for the plaintiff's rental premises is sufficient in this case to make the measure of damages something other than the difference money standard quoted above.

"Where a breach of contract occurs, the law aims to

make compensation adequate to the real injury sustained, and to place the injured party, so far as money can do it, in the same position he would have occupied if the contract had been fulfilled." *Hammond* v. *Hannin* (1870), 21 Mich 374, 384.

"The purpose of awarding damages is always said to be compensation for harm done. The effort is made to put the injured party in as good a position as he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with the harms that he had no sufficient reason to foresee when he made the contract." 5 Corbin, Contracts, § 1002, p 31.

The damages plaintiff now demands would be excessive. It was his responsibility to erect the building under the contract and to bear all the costs of this improvement. It would not be proper to assess the defendant for the value of the demolished buildings because it was outside the contemplation of the parties, since plaintiff was to recover his investment from the rentals, and the plaintiff actually completed the new building and eventually rented it. Under the broken contract, the premises were to be completed October 1, 1960; plaintiff testified that he suspended the building operations in September, 1960, in order to be able to complete it to meet the needs of whatever new tenant he might acquire.

Measuring damages by the profits plaintiff lost because of defendant's breach will fully compensate the plaintiff on the facts now before this Court.

"The party who has been wrongfully deprived of the gains and profits of an executory contract may recover as an equivalent, and by way of damages, the difference between the contract price, the amount which he would have earned and been entitled to recover on performance, and the amount which it would have cost him to perform the contract."

*Walton School of Commerce* v. *Stroud* (1929), 248 Mich 85, 90, quoting with approval 17 CJ, p 855.

The lost profit is computed by subtracting the expenses, as determined by acceptable accounting procedures, that plaintiff would have incurred in fulfilling his contractual obligation from the total rentals defendant corporation would have paid under the terms of the contract for the period of time before the replacement tenant assumed occupancy. Credit against damages is given for the $1,000 security deposit.

The judgment of the trial court is affirmed on the issue of a contract, but the case is remanded for a redetermination of damages. Costs are awarded to the plaintiff-appellant.

J. H. Gillis, P. J., and Watts, J., concurred.