NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0700n.06
Filed: August 11, 2005

Nos. 04-1787 & 04-1877

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LOWE'S HOME CENTERS, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LL&127, LLC; EASTWOOD, LLC, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants, | ) | |
| Cross-Appellees. | ) | |

**Before: ROGERS and SUTTON, Circuit Judges; FORESTER, District Judge.**[*]

**ROGERS, Circuit Judge.** In late 2001, Lowe's Home Centers, Inc. signed an agreement

with Michael Eyde, the principal of LL&127, LLC ("LL"),[1] to lease Lowe's the space for a store on

land that was being developed as a mall in Lansing, Michigan. Unfortunately, the relationship

between the parties soured shortly after the contract was signed, and Lowe's brought a diversity

breach of contract action in federal court against LL. Following a jury verdict in favor of Lowe's,

both sides now appeal. LL urges reversal of the judgment on the grounds that: (1) the contract is

unenforceable because essential terms of the agreement were left undefined and reserved for future

---

[*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

[1]Eastwood, LLC, also owned by Mr. Eyde, eventually acquired LL's interests in the
property being developed as a mall, including the contract at issue in this litigation. There is no
meaningful distinction between the entities for purposes of this appeal.

negotiations; (2) the contract is unenforceable because the agreement lacks mutuality of obligation; and (3) there is no implied covenant of good faith under Michigan contract law. LL also argues that the district court abused its discretion by denying in part LL's motion in limine to exclude evidence relating to negotiations between LL and Lowe's prior to the execution of the contract at issue in the litigation. Lowe's cross-appeals, arguing the district court abused its discretion by denying Lowe's request for specific performance. As none of the arguments raised on appeal has merit, we affirm.

I.

The dispute between LL and Lowe's stems from the development of a mall in Lansing, Michigan. The principal of LL, Michael Eyde, owns a 192-acre tract of land near Lake Lansing Road and U.S. 127. In 1999, Wal-Mart and Lowe's separately approached Mr. Eyde about purchasing some of his property at Lake Lansing Road in order to construct stores. Mr. Eyde was not interested in selling the property, and instead entered into agreements with two real estate development firms, AIG Baker, Inc., and Jeffrey R. Anderson Real Estate, Inc. ("J.R. Anderson"), to develop the Lake Lansing Road site. Each firm was to develop a portion of the site, with AIG Baker developing a "big box" mall on one portion of the site, and J.R. Anderson developing a "lifestyle" mall with smaller stores on another. Under the agreement with AIG Baker, Mr. Eyde would lease the site to AIG Baker, and AIG Baker would sublease the site to the mall's prospective tenants, Sam's Club, Wal-Mart and Lowe's.

Wade Laufenberg, Senior Real Estate Manager for Lowe's, contacted AIG Baker about the

Lake Lansing Road site. AIG Baker and Lowe's eventually executed a letter of intent on June 16, 2000, in which Lowe's agreed to a ground lease for a store in the big box mall AIG Baker was developing. In the letter of intent, Lowe's agreed to pay $800,000 in rent annually for the first five years of the lease, with the rent to increase thereafter according to a schedule. In May of 2001, however, Mr. Eyde ended his relationship with AIG Baker and turned over responsibility for the big box mall to J.R. Anderson. Mr. Eyde instructed J.R. Anderson to negotiate ground lease agreements with the potential big box tenants on the same terms as AIG Baker. Negotiations proceeded, and on December 5, 2001, Lowe's and Mr. Eyde executed an "Agreement to Enter into Ground Lease"("the Ground Lease agreement"), the contract at issue in this litigation.

The Ground Lease agreement provided that LL and Lowe's would, at a later date, execute a ground lease for a Lowe's store located in the big box mall being developed at the Lake Lansing Road site, with Lowe's paying $550,000 a year in rent for the first five years of the lease, with a schedule of rent increases to follow thereafter. Such agreements are typical in mall developments, where initial commitments are needed to proceed to later, more specific stages of the development. Negotiations regarding the Lowe's Site Development Agreement ("the Site Development agreement") proceeded parallel to the negotiation of the Ground Lease agreement. The Site Development agreement was a more specific contract between the parties setting out the construction plans for the site and a schedule for the work that LL needed to complete to ready the site for the Lowe's store. It appeared at the time the Ground Lease agreement was executed that the parties were close to finalizing the Site Development agreement.

Given the preliminary nature of the Ground Lease agreement and the possibility of problems with the development of the mall, the Ground Lease agreement required a number of events to take place before the parties executed the lease for the Lowe's store. These requirements are detailed in Section 4 of the Ground Lease agreement and are the primary focus of LL's appeal. Section 4 of the Ground Lease agreement specifies "[Lowe's] Requirements," and begins:

> [Lowe's] shall be under no obligation to lease the Demised Premises or otherwise perform under this Agreement unless [Lowe's] determines that the Premises are suitable for its intended purposes and until each of [Lowe's] Requirements … are satisfied. The decision as to whether the Premises are suitable for its intended purposes and the Requirements have been fulfilled shall be the sole decision of [Lowe's], determined in the absolute discretion of [Lowe's], with [Lowe's] decision being final and binding upon the Parties.

The requirements for executing the ground lease are then detailed. Further discretion is vested in Lowe's under section 4(l), which provides that Lowe's must deem its intended use of the premises to be economically feasible before it will execute the lease.

Section 4(n)(i) of the Ground Lease agreement requires Lowe's and LL to negotiate certain collateral documents, including the Site Development agreement, within sixty days of the effective date of the Ground Lease agreement in order to proceed to execute the lease. With regard to the Site Development agreement, the Ground Lease agreement provides:

> The Lowe's Site Development Agreement, to be attached hereto as Exhibit B, shall include among other things, [LL's] obligation … to obtain all permits and approvals for completion of certain improvements to serve the entire shopping center ("Shopping Center"), comprising approximately one hundred and ninety two (192) acres as shown or designated on the designated Master Site Plan, including without

- 4 -

> limitation storm water facilities, an off site traffic signal, de-acceleration lanes along [roads near the proposed shopping center], [and] roads internal to the Shopping Center (…the "Shopping Center Improvements"). [LL] shall also develop or construct certain improvements for the exclusive use of [Lowe's] including without limitation a complete building pad … ready for the construction of [Lowe's] building (the "Pad") in accordance with the specifications and schedule set forth in the Lowe's Site Development Agreement. The Lowe's Site Development Agreement shall further provide that [Lowe's] shall contribute its pro-rata share of costs of the Shopping Center Improvements … and that [Lowe's] shall reimburse [LL] for the development costs of the Pad. [Lowe's] total contribution to the costs of the Shopping Center Improvements and the Pad shall, in no case, exceed [$2,900,000].

The execution of the Site Development agreement was further made a condition to closing the lease; neither LL nor Lowe's was required to consummate the closing unless the Site Development agreement was executed prior to or simultaneously with the lease. Finally, the Ground Lease agreement contained an integration clause, which stated in part "[n]o prior written or verbal Agreement shall survive the execution of this Agreement."

After executing the Ground Lease agreement, Mr. Eyde discovered that the proposed rent that he agreed to was substantially less than the rent that Lowe's had agreed to pay AIG Baker. Mr. Eyde then contacted Mr. Laufenberg and indicated that he did not intend to proceed under the Ground Lease agreement. William Tomblin, Mr. Eyde's and LL's attorney, contacted Suzanne Reynolds, Lowe's attorney for the project, by telephone on January 16, 2002, and told her that Mr. Eyde did not intend to proceed with the deal unless he got substantially more money. Two days later, Mr. Tomblin called Ms. Reynolds again and informed her that the Ground Lease agreement was unenforceable; he further indicated that Mr. Eyde had no obligation to proceed in good faith to negotiate the Site Development agreement.

In a January 22, 2002, letter to Ms. Reynolds, Mr. Tomblin changed course. He indicated that there were soil problems at the site, requested the proposed Lowe's Site Development agreement, claiming that LL had not seen the document, and accused Lowe's of defrauding Mr. Eyde. Mr. Tomblin also indicated that the deadline for negotiating the Site Development agreement was approaching, and that Mr. Eyde intended to interpret the Ground Lease agreement strictly. Ms. Reynolds sent a copy of the Site Development agreement to Mr. Tomblin, who made extensive revisions and sent the document back. In a letter, Ms. Reynolds responded that the changes were unacceptable. The Site Development agreement was never executed.

After negotiations over the Site Development agreement failed, Lowe's sued LL for breach of contract. Lowe's alleged that LL breached the Ground Lease agreement by refusing to negotiate the Site Development agreement in good faith. Lowe's requested specific performance of the Ground Lease agreement. LL moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), or alternatively for summary judgment, arguing that the Ground Lease agreement was unenforceable because: (1) it reserved material terms for further negotiations; (2) it failed to comply with the statute of frauds; (3) it lacked mutuality of obligation; and (4) Lowe's failed to satisfy a condition precedent. LL also asserted a variety of affirmative defenses, including fraudulent inducement. Lowe's filed a cross-motion for partial summary judgment, arguing that the Ground Lease agreement was enforceable and that LL had an obligation to perform the contract in good faith.

The district court granted Lowe's motion for summary judgment in part and denied LL's motions to dismiss and for summary judgment. The district court found that the Ground Lease

agreement was a valid, enforceable contract and held that LL had a duty to negotiate the Site

Development agreement in good faith. The district court rejected Lowe's assertion that the only

question that remained was whether specific performance was appropriate. Rather, the district court

concluded, a jury needed to resolve the factual question of whether LL breached the Ground Lease

agreement by failing to negotiate the Site Development agreement in good faith. After further

briefing on the issue of mutuality of obligation, the district court concluded that the contract was not

invalidated by the fact that, under the Ground Lease agreement, Lowe's had discretion not to

proceed to execute the lease. The district court noted that cancellation clauses do not void an

agreement for lack of mutuality of obligation, so long as the performance of both parties is excused.

LL filed a motion for reconsideration of its motion to dismiss, which was denied. The case then

proceeded to trial on the issue of whether LL breached the Ground Lease agreement by failing to

negotiate the Site Development agreement in good faith.

Prior to trial, LL filed a motion in limine to exclude evidence of the negotiations between

LL and Lowe's over the Site Development agreement, to the extent that the negotiations occurred

prior to the execution of the Ground Lease agreement. LL argued that the Ground Lease

agreement's integration clause barred the introduction of evidence regarding the parties' negotiation

of the Site Development agreement under the parol evidence rule. The district court granted in part

and denied in part LL's motion in limine. The district court ruled that Lowe's could introduce

evidence regarding the negotiation of the Site Development agreement to show LL's lack of good

faith, but could not introduce such evidence to establish that the parties had agreed on the terms of

the Site Development agreement. The case proceeded to trial, before both a jury and the district judge sitting in equity. After a five day trial, the jury returned a verdict in favor of Lowe's, finding that LL breached the Ground Lease agreement by failing to negotiate the Site Development agreement in good faith. The jury awarded Lowe's $3.3 million in damages resulting from the failure to negotiate the Site Development agreement in good faith, but made no award of future damages resulting from the failure to lease Lowe's the space for a store.

After further briefing, the district court denied Lowe's request for specific performance. The district court concluded that the relationship between LL and Lowe's under the Ground Lease agreement would require continuing judicial supervision, making specific performance an inappropriate remedy. The district court further concluded that specific performance was inappropriate because the district court would have to revise the Ground Lease agreement and, under the contract, Lowe' retained the discretion not to perform. LL then filed a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), again arguing that the contract was unenforceable, which the district court denied. Both parties now appeal.

## II.

The district court properly concluded that the Ground Lease agreement is an enforceable contract. LL's arguments that the Ground Lease agreement omitted material and essential terms of the Site Development agreement, that the Ground Lease agreement lacked mutuality of obligation, and that LL was not required to perform the Ground Lease agreement in good faith, lack merit. The

district court ruled on LL's arguments regarding the enforceability of the Ground Lease agreement at various stages of the litigation: in a motion to dismiss for failure to state a claim under Rule 12(b)(6); a motion for summary judgment under Rule 56; and a motion for judgment as a matter of law under Rule 50(b). In each case the district court's conclusion is a legal question that we review de novo. *See Cytacki v. AP Parts Mfg. Co.*, No. 94-2274, 1996 WL 15624 at *4 (6th Cir. Jan. 16, 1996) (Rule 12(b)(6)); *Innovative Case, Inc. v. Tweddle Litho Co.*, No. 04-1445, 2005 WL 1506051 at *4 (6th Cir. June 24, 2005) (Rule 56); *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175-77 (6th Cir. 1996) (Rule 50(b)).

A.      Section 4(n)(i) of the Ground Lease Agreement Contains the Material and Essential Terms of the Site Development Agreement

The Ground Lease agreement is an enforceable contract because Section 4(n)(i) contains the material and essential terms of the Site Development agreement. LL argues that the Ground Lease agreement is an unenforceable "agreement to agree." Under Michigan law, it is well recognized that parties can enter into an enforceable contract that requires them to execute another contract at a later date. *Opdyke Inv. Co. v. Norris Grain Co.*, 320 N.W.2d 836, 838 (Mich. 1982); *Prof'l Facilities Corp. v. Marks*, 131 N.W.2d 60, 63 (Mich. 1964); *Hansen v. Catsman*, 123 N.W.2d 265, 266 (Mich. 1963). However, a contract that requires the execution of a future agreement will fail for indefiniteness if the material and essential terms of the future agreement are not included in the contract executed by the parties. *Id.*; *Socony-Vacuum Oil Co. v. Waldo*, 286 N.W. 630, 632 (1939). Michigan courts have referred to this as the "basic principle [for determining the enforceability of]

preliminary agreements for the construction and lease of business premises." *Brodsky v. Allen Hayosh Indus., Inc.*, 137 N.W.2d 771, 772 (Mich. Ct. App. 1965).

The Ground Lease agreement is enforceable because Section 4(n)(i) of the Ground Lease agreement sufficiently sets out the material and essential terms of the Site Development agreement. Section 4(n)(i) details the division of labor and costs between LL and Lowe's for the construction of the Lowe's store and the big box mall. This section provides that, under the Site Development agreement: (1) LL will secure approval for and construct improvements to serve the mall as a whole, including storm water facilities, roads, an off-site traffic signal; (2) LL will develop or construct a complete building pad, ready for the construction of the Lowe's store; and (3) Lowe's will reimburse LL, up to $2.9 million, for a portion of the cost of the common improvements shared by all tenants, as well as the full cost of developing the pad on which Lowe's would construct its new store. The scope of the work each party will perform and each party's potential liability in terms of cost are the material and essential terms of the Site Development agreement and are sufficiently stated in the Ground Lease agreement. *See Brodsky*, 137 N.W.2d at 773.

LL relies primarily on *Hansen v. Catsman* in arguing that the Ground Lease agreement does not provide the material and essential terms of the Site Development agreement. 123 N.W.2d 265 (Mich. 1963). The contract found unenforceable in *Hansen*: (1) "contemplated" the construction of a store by the defendant and the lease of the store by the plaintiff; (2) set out approximate dimensions of the building, but provided that the building "be erected in accordance with plans and specifications and design not as yet formalized"; and (3) gave both parties the right to cancel the

agreement "if for any reasonable reason the plans, specifications and design of said building are unacceptable." *Id*. at 266. The terms of the contract at issue in *Hansen* are less definite than the terms of the Ground Lease agreement and the Site Development agreement discussed therein. Further, in *Hansen* the Michigan Supreme Court noted that the parties' use of the word "contemplates" was meaningful, demonstrating the lack of commitment to the future agreement. *Id*. at 267. By contrast, the Ground Lease agreement provides that LL and Lowe's "shall" agree on the Site Development agreement.

        B.      The Ground Lease Agreement is not Void for Lack of Mutuality of Obligation

The Ground Lease agreement does not fail for lack of mutuality of obligation. LL contends that Section Four of the Ground Lease agreement renders the contract void because Lowe's is not obligated to perform. Section Four of the contract provides that Lowe's is not obligated to lease the premises if Lowe's determines that the site is not suitable for its intended purposes. Under Michigan law, mutuality of obligation is an essential element of a valid contract. *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991). Mutuality of obligation means that both parties to an agreement must be bound by the contract, or neither is bound. *Domas v. Rossi*, 217 N.W.2d 75, 77 (Mich. Ct. App. 1974). However, cancellation or termination clauses do not void a contract for lack of mutuality of obligation, so long as both parties are relieved of their respective obligations in the event the contract is cancelled or terminated. *Jaye v. Tobin*, 202 N.W.2d 712, 714-15 (Mich. Ct. App. 1972) (holding a cancellation clause that releases both parties from their obligations does not render contract void for lack of mutuality of obligation). The language cited by LL in Section Four of the

Ground Lease agreement is a valid cancellation or termination clause, the exercise of which would relieve both LL and Lowe's of their respective obligations. Therefore, under *Jaye*, the Ground Lease agreement does not fail for lack of mutuality of obligation. The termination provision in this case was clearly contemplated to be exercised, if at all, at a later point in the dealings between the parties. We cannot read the Ground Lease agreement as imposing no obligation from day one because of the presence of the termination provision.

        C.      Michigan Law Requires that the Ground Lease Agreement be Performed and Enforced in Good Faith

The Ground Lease agreement contained an implied covenant of good faith in the performance of the contract, and LL's failure to negotiate the Site Development agreement in good faith could constitute a breach the Ground Lease agreement. Every contract contains an implied covenant of good faith in the performance and enforcement of the contract. *See Ferrell v. Vic Tanny Int'l, Inc.*, 357 N.W.2d 669, 672 (Mich. Ct. App. 1984) ("Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith.") (quoting *Burkhardt v. City Nat'l Bank of Detroit*, 57 Mich. App. 649, 652, 226 N.W.2d 678 (1975)); *see also Pavlovich v. Arbor Drugs, Inc.*, No. 223087, 2002 WL 991726 at *5 (Mich. Ct. App. May 10, 2002). As LL notes, Michigan law does not recognize an action independent of breach of contract for a breach of the implied covenant of good faith. *See Kewin v. Massachusetts Mut. Life Ins. Co.*, 295 N.W.2d 50 (Mich. 1980); *Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991).

However, where the manner of performance under a contract is left to the discretion of a party, that party may breach the contract by exercising its discretion in bad faith. *Wedding Belles v. SBC Ameritech Corp., Inc.*, No. 250103, 2005 WL 292270 at \*1 (Mich. Ct. App. Feb. 8, 2005); *Ferrell*, 357 N.W.2d at 672; *see Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 334 n.23 (3d Cir. 2001) (distinguishing breach of contract based on bad faith in performance from independent tort action for breach of implied covenant of good faith under Michigan contract law). The Ground Lease agreement obligated Lowe's and LL to negotiate the Site Development agreement, but the manner in which the parties negotiated was left to their discretion. Lowe's contract claim, based on LL's bad faith in the negotiation of the Site Development agreement, is therefore recognized by Michigan law.

## III.

The district court did not abuse its discretion by denying LL's motion in limine to exclude evidence regarding the negotiation of the Site Development agreement prior to the execution of the Ground Lease agreement under the parol evidence rule. The Ground Lease agreement's integration clause did not bar the introduction of evidence related to the negotiation of the Site Development agreement under the parol evidence rule because the evidence was admitted to show LL's lack of good faith in the performance of the Ground Lease agreement, rather than to vary the unambiguous terms of the Ground Lease agreement.

The parol evidence rule bars the introduction of evidence to vary or modify the terms of an

unambiguous written contract containing an integration clause. *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998); *Ditzik v. Schaffer Lumber Co.*, 360 N.W.2d 876, 880 (Mich. Ct. App. 1984). However, evidence is inadmissible under the parol evidence rule only when the evidence is inconsistent with the unambiguous written agreement. *Union Oil Co. of California v. Newton*, 245 N.W.2d 11, 12 (Mich. 1976). The district court allowed Lowe's to introduce evidence regarding the negotiation of the Site Development agreement to demonstrate LL's lack of good faith and establish that LL breached the Ground Lease agreement. The evidence that Lowe's introduced was relevant to the issue of LL's good faith, consistent with the unambiguous terms of the Ground Lease agreement, and thus admissible. Therefore, the district court did not abuse its discretion by denying LL's motion in limine.

## IV.

Finally, the district court did not abuse its discretion by denying Lowe's request for specific performance. Specific performance of a contract is an equitable remedy left to the sound discretion of the district court. *See Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc.*, 201 F.3d 231, 249 (3d Cir. 1999); *Brotman v. Roelofs*, 246 N.W.2d 368, 372 (Mich. Ct. App. 1976) (citing *Smith v. Lawrence*, 15 Mich. 499, 501 (1867)). It is a remedy of grace and not a matter of right, depending on the circumstances of a particular case. *Laker v. Soverinsky*, 27 N.W.2d 600, 601 (Mich. 1947); *Derosia v. Austin*, 321 N.W.2d 760, 762 (Mich. Ct. App. 1982). Specific performance is inappropriate where continuous or long-term judicial supervision would be required, *Edidin v. Detroit Econ. Growth Corp.*, 352 N.W.2d 288, 291 (Mich. Ct. App. 1984), the terms of the contract

are not sufficiently certain, *Laker*, 27 N.W.2d at 601, or the party requesting specific performance may, through the exercise of discretion, terminate the contract. *Rust v. Conrad*, 11 N.W. 265, 267 (Mich. 1882) (specific performance inappropriate if "one of the parties might nullify [the court's] action through the exercise of a discretion which the contract or the law invests him with").

It was within the discretion of the district court to conclude that specific performance was inappropriate in this case. To begin, the mall was in the preliminary stages of development. LL and Lowe's would be required to cooperate under the Ground Lease agreement in both the negotiation of the Site Development agreement and the development of the Lake Lansing Road site. Ordering specific performance would require court supervision of the parties at least until the mall was completed and Lowe's was installed as a tenant. Further, Lowe's request for specific performance contemplated modification of the Ground Lease agreement, and the Ground Lease agreement Lowe's is seeking to enforce vests Lowe's with the discretion to avoid performing under certain circumstances. Finally, the district court's conclusion that specific performance was inappropriate is supported by the fact that the jury declined to award future damages for LL breach of contract, limiting the award to damages incurred as a result of the delay caused by LL's refusal to negotiate the Ground Lease agreement in good faith. In sum, given the circumstances of the case, declining to order specific performance of the Ground Lease agreement was well within the district court's discretion.

AFFIRMED

*Nos. 04-1787 & 04-1877*
*Lowe's Home Ctr., Inc. v. LL&127, LLC*