# STATE OF MICHIGAN

# COURT OF APPEALS

---

CENTRAL WAREHOUSE OPERATIONS, INC.,

        Plaintiff-Appellee,

v

PATRICK RIFFEL, HPC TRANSPORTATION
BROKERAGE, LLC d/b/a HIGHWAY PRO
CONNECTION, and HAUSBECK PICKLE
COMPANY, INC.,

        Defendants-Appellants.

UNPUBLISHED
March 24, 2015


No. 319183
Saginaw Circuit Court
LC No. 13-019766-CK

---

Before: WILDER, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order granting plaintiff's motion to enforce a settlement agreement between the parties. We reverse.

In 2012, plaintiff filed suit against defendant Riffel, a former employee, alleging that he breached his contract with plaintiff, violated terms of a non-compete agreement and confidentiality clause and breached fiduciary duties when he left plaintiff's employ and began working with defendants HPC Transportation Brokerage, LLC and Hausbeck Pickle Company, Inc. Plaintiff further alleged that all defendants tortiously interfered with a contract and/or advantageous business relationship or expectancy and engaged in a civil conspiracy.

On January 23, 2013, defendants HPC's and Hausbeck's president, Timothy Hausbeck, and plaintiff's president, John Strobel, negotiated an oral settlement agreement with the aid of a facilitator. The parties' respective attorneys were not present at that meeting, and the agreement was not reduced to writing.

Defendants signed a settlement agreement dated January 28, 2013, and sent it to plaintiff for its president's signature. Instead of signing the document, plaintiff faxed a different version of a settlement agreement to defendants' counsel on February 25, 2013. While some portions of the two documents are similar (both stated that Riffel could work for HPC in the freight brokerage business but not solicit plaintiff's clients for warehouse business), differences existed (the latter stated that "Riffel shall not engage in work associated with warehousing or related value added service activities"). The version sent by plaintiff also stated that HPC would pay plaintiff 2.25% of *gross revenue* paid by Michigan Sugar to HPC to February 1, 2016, whereas

-1-

defendant's draft stated the payment would be 2% of *gross profits* and would only last until January 1, 2016.

As every draft of the settlement agreement prohibited defendant Riffel from soliciting plaintiff's warehouse clients, every draft also contained a requirement for plaintiff to provide defendants with a list of plaintiff's current clients. On February 28, 2013, defendants HPC's and Hausebeck's counsel sent an e-mail to plaintiff's counsel asking her to double check the client list he had received because in his view many of the entities on the list were not current clients.

A hearing was held on March 5, 2013. It does not appear defendants HPC's and Hausebeck's counsel were present at the hearing. At the hearing plaintiff's counsel stated that a settlement had been reached but specifically stated that "[w]e're still working on some of the final aspects of the settlement agreement itself, that being the customer list." The trial court asked for a response by defendant Riffel's counsel, and he stated "[t]hat's my understanding, Judge." The trial court stated that it would give the parties two weeks to get him a final order dismissing the case, or it would be dismissed without prejudice pursuant to what was placed on the record. The trial court asked if the parties agreed, and both plaintiff's counsel and defendant Riffel's counsel answered in the affirmative. When a settlement agreement signed by all the parties was not given to the trial court by the two week deadline, the trial court dismissed the case without prejudice.

On May 13, 2013, plaintiff filed its complaint in this present action (which essentially repeated the allegations in the first action) as well as a motion to enforce the version of the settlement agreement that it had signed on February 25, 2013, but that did not contain any of defendants' signatures. A hearing on plaintiff's motion was held on June 10, 2013; defendants HPC's and Hausebeck's counsel did not attend. Plaintiff's counsel indicated that she believed a settlement had been reached and that the defendants' only objection was regarding the client list, which she stated was not a specific objection and not a reason to refuse signing the agreement. Plaintiff's counsel stated that the first version of the settlement agreement that defendants both signed referenced the same client list the defendants were disputing. Defendant Riffel's counsel stated that they did not have a settlement agreement because the version they signed, the first version, was altered by plaintiff's counsel. Defendant Riffel's counsel stated that he believed that they did have a settlement agreement with the first version, but that defendants did not agree to the latter version. After defendant Riffel's counsel stated that the latter agreement was different, the trial court asked plaintiff's counsel how it was different. Plaintiff's counsel responded as follows:

> Your Honor, it clarified a number of things. Actually the one that was signed by Mr. Fordney[1] on behalf of all the parties was one that was not accurate. It didn't accurately reflect—we went through four more versions. In fact, some of my exhibits show that after the date that Mr. Fordney alleged that they signed the agreement, he was requesting additional language to be put in that

---

[1] Defendants HPC's and Hausebeck's counsel.

settlement agreement. The material terms are not different, some of the language is.

Plaintiff's counsel then stated that defendants' only objection related to the client list.

The trial court, without letting defense counsel respond to plaintiff's characterization of the differences, granted plaintiff's motion.

Another hearing was held on August 5, 2013. Counsels for all defendants were present. Defendants HPC's and Hausebeck's counsel stated that the client list that it received from plaintiff was not a current client list. Counsel stated that he wanted a finalized client list that was signed by plaintiff's president and that "if he does that, and presents to this Court these clients as being a current list of the present clients that he has at the—as of 2/23/2013, then we've got a deal." When the court asked defendant Riffel's counsel if he had anything to add, counsel stated, "Mr. Riffel doesn't have anything." The trial court then signed the order enforcing the settlement agreement.

Subsequently, defendants filed a motion for reconsideration that for the first time pointed out the substantive differences in the version of the settlement agreement that they signed and the version that plaintiff had signed such as a changing the term "gross profit" to "gross revenue" with respect to the disputed Michigan Sugar account. The trial court denied the motion because it determined that defendants had not raised any new issues or any arguments that could not have been presented to the court at the hearing on plaintiff's original motion.

## II. STANDARD OF REVIEW

The decision to enforce a settlement agreement is reviewed for an abuse of discretion. See *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *City of Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 254; 701 NW2d 144 (2005).

## III. ANALYSIS

Settlement agreements are contracts and governed by the legal principles applicable to the construction and interpretation of contracts. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 663; 770 NW2d 902 (2009). "However, this Court will not enforce a settlement agreement that fulfills the requirements of contract principles if that agreement does not also satisfy the requirements of" MCR 2.507(G). *Michigan Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 484-485; 637 NW2d 232 (2001). MCR 2.507(G)[2] provides as follows:

---

[2] Prior to January 1, 2015, this court rule was MCR 2.507(F).

An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

In the present case the only writing defendants have signed is the first version of the settlement agreement; there is no writing signed by any defendant evidencing agreement to the settlement agreement plaintiff seeks to have enforced. Therefore, the only way that plaintiff's motion could have been properly granted is if the purported agreement "was made in open court." *Id.*

Although "[a] party cannot, after agreeing in open court, refuse to sign a proposed judgment which accurately incorporates the agreement unless there was mistake, fraud, or unconscionable advantage which would justify setting aside the settlement agreement," *Mich Bell Tel Co v Sfat*, 177 Mich App 506, 515; 442 NW2d 720 (1989), "a party's repudiation of a settlement agreement before it is placed on the record in open court . . . is a 'denial' of the agreement for purposes of the court rule," *Brunet v Decorative Engineering*, 215 Mich App 430, 433; 546 NW2d 641 (1996).

In the present case, while the parties did acknowledge some form of agreement was made, upon examination of the entire record, it appears that that agreement was nothing more than an agreement to agree and not an enforceable settlement agreement. There is no evidence to suggest what was actually agreed to during the mediation conference other than what is in the record. The record shows that defendants signed and sent a draft of an agreement to the plaintiff, which sent back a different version. Further, the record indicates that plaintiff only initially sent it to defendants HPC and Hausebeck and not to defendant Riffel. Defendants HPC's and Hausebeck's counsel did not sign this draft, but faxed the coversheet back requesting changes. Plaintiff made the recommended changes and then signed and e-mailed the draft to all defendants. The drafts are different.

Plaintiff heavily relies on the actions taken by defendants HPC's and Hausebeck's counsel with respect to the draft it signed. However, the record shows that on February 28, 2013, defendants HPC's and Hausebeck's counsel objected to the client list that was attached to that draft because he believed it included past as well as current clients. Every draft of the settlement agreement prohibits defendant Riffel from discussing warehouse work with plaintiff's clients, and the clients are defined by the list. The restrictions placed on defendant Riffel could change drastically based on how many clients are on that list. Therefore, the extent of the clients list is material to the obligations that defendant Riffel would have under any settlement agreement.

Even if it is assumed that the client list is not a material term, it appears that defendant Riffel's counsel had more objections to plaintiff's draft at the June 10, 2013, hearing. He stated on the record that "[t]he second settlement agreement changes materially a number of terms that were in the first agreement." The trial court merely asked plaintiff's attorney to state what the differences were without giving defendant Riffel's attorney an opportunity to explain what he believed the differences were.

Despite the fact that at various points the parties all expressed that a settlement agreement had been reached, the record does not show that the parties ever came to anything more than an agreement to agree. While it is possible for parties to make a contract binding them to "prepare and execute a subsequent agreement" if all essential terms are expressed, where the future agreement is to contain a material term not already agreed upon "the so-called 'contract to make a contract' is not a contract at all." *Prof Facilities Corp v Marks*, 373 Mich 673, 679; 131 NW2d 60 (1964). Because the parties never reached an agreement on all material terms, the trial court abused its discretion in granting plaintiff's motion.[3]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

---

[3] Because we conclude that the trial court abused its discretion in granting plaintiff's motion, we need not consider whether the trial court erred in denying defendants' motion for reconsideration.